E. KALLMAN V. B. LUDENECKER ET AL.

No. 1058.

1. **Vendor's Lien—Homestead—Subrogation.**—In many instances in this State persons who have furnished money to be used, and which was so used, to discharge vendor's liens have been subrogated to the rights of the original lienholders, even as against homestead rights. In all such cases the money loaned was applied to the satisfaction of the original lien. The doctrine of subrogation in such cases rests upon the fact that the money furnished by the lender had been used to pay for the land; and unless it has been so used, there can be no subrogation. See example.

2. **Estoppel—Express Lien.**—Husband borrowed money on express promise that it should be used to pay off a vendor's lien upon the homestead. The note executed for the loan recited that it was secured by vendor's lien. The money was not so applied, but the husband subsequently paid the orignal note given for the land. After the death of the husband, in suit to enforce the lien recited in the notes executed for the loan, *Held*, that the husband could not incumber the homestead without concurrence of the wife, and that together they could not incumber it for a loan; and that the wife and her children were not estopped to resist the foreclosure of the notes so made by her husband.

APPEAL from Milam. Tried below before Hon. JOHN N. HENDERSON.

The opinion contains a statement.

*Henderson & Streetman* and *Tracy & Wallace*, for appellant.—1. One who pays a debt at the instance of the debtor under such circumstances that it appears to have been contemplated by the parties that he should become entitled to the benefit of the security for the debt held by the creditor from the debtor, may as against the debtor be subrogated to the benefit of such security, and of the debt which he has discharged, and a party who has paid the debt at the request of the debtor, and under circumstances which would operate a fraud upon him if the debtor afterwards were allowed to insist that the security for the debt was discharged by his payment, may also be subrogated as against that debt. Oury v. Sanders, 13 S. W. Rep., 1030; Sheldon on Sub., sec. 247.

2. It is not necessary that the creditor assent to the agreement for subrogation, but the debtor and the party who make the loan can make it without consulting him. Fievel v. Zuber, 3 S. W. Rep., 273.

3. It is not necessary that he should make any assignment of the security, or even know who furnishes the money; nor is it necessary that the money be paid directly to the lienholder, but it may be paid in an indirect manner. Fears v. Albea, 6 S. W. Rep., 286.

4. The creditor can not make an unreasonable application of a payment so as to work an injustice to the debtor. Taylor v. Coleman, 20 Texas, 772.

5. Where the creditor holds a debt due to himself, and another from the same debtor due to himself and a third party, he must apply all payments ratably on the two debts. Colby v. Copp, N. H., 434.

6. A purchased land from B, which was incumbered by a mortgage from B to C, as agent of D. C also held a debt in his own right against B. A paid money to C on B's account, not knowing of the latter's indebtedness to C individually, and made no express appropriation of the payment. Held, that C could not apply the payment to the individual indebtedness, but would be held to appropriate it to reduce the incumbrance on the land. 7 Shel. & M. (Miss.), 699.

7. If from the very nature of the transaction it appears to be the intention of the debtor that the money shall be appropriated to a particular debt, the creditor can not make another and a different appropriation of it. Phillips v. McGuire, 73 Ga., 517; Holly v. Hardeman, 76 Ga., 328.

*H. C. Grayson* and *E. L. Anthony,* for appellees.

KEY, ASSOCIATE JUSTICE.—Appellant instituted this suit against B. Ludenecker and his wife, Anna Ludenecker, and her children by a former husband, upon certain notes executed by F. Venghaus, the deceased husband and father, and alleged to be secured by a vendor's lien on a certain tract of land, shown by the testimony to have been the homestead of F. Venghaus and his wife at the time of the accrual of the rights asserted by appellant. No personal judgment against appellees was sought, appellant asking only for a sale of the land to pay his demand. The case was tried before the court without a jury, and conclusions of law and fact were filed. The conclusions of fact— except the statement that Paul Pieper, the holder of the real vendor's lien notes, left Milam County in 1884 or 1885—are supported by the evidence, and, with that exception, are adopted by this court. In view of other facts, the exception noted is not material.

Neither the notes in suit nor the one in renewal of which they were given were for the original purchase money of the land. The evidence shows, that F. Venghaus was indebted for his homestead upon vendor's lien notes in an amount exceeding $300; that he borrowed $300 from one George Stallman and gave his note therefor, reciting a vendor's lien on said land; that it was stipulated and agreed between said F. Venghaus and Stallman at the time said loan was made that said $300 was to be used in paying off the pre-existing vendor's lien on said land; but that in fact it was not so used, but was applied to the payment of another and different debt. Such application, however, was without the knowledge or consent of Stallman. That the notes sued on were given in renewal of the $300 note to Stallman, and were, before maturity and for a valuable consideration, transferred to appellant. It was also shown, that the original purchase money notes had been paid by said F. Venghaus. On these facts, and the showing as herein before stated, that the land was the homestead of F. Venghaus and his family, the court below held that appellant had no lien on the land, and rendered judgment for the defendants; and in our opinion

said ruling and judgment are correct.  In many instances in this State persons who have furnished money to be used—and which was so used—to discharge vendor's liens, have been subrogated to the rights of the original lien holders, even as against homestead rights.   Hicks v. Morris, 57 Texas, 658; Wahrmund v. Merritt, 60 Texas, 24; Eylar v. Eylar, 60 Texas, 315; Pridgen v. Warn, 79 Texas, 588.   But in all such cases that have come under our observation, the money loaned was applied to the satisfaction of the original lien.   In fact, the doctrine of subrogation in such cases rests upon the fact that the money furnished by the lender has been used to pay for the land; and unless it has been so used there can be no subrogation.

The only other grounds for asserting a lien in appellant's favor, are contract and estoppel.   By the express terms of the Constitution, there can be no contract lien upon the homestead, "except for the purchase money therefor or improvements made thereon" (Constitution, article 16, section 50); and therefore, the money involved in this case not having been applied as a payment for the land, nor for improvements thereon, the asserted contract lien is stricken down by the Constitution.   If Venghaus' homestead rights had been separate and apart or severable from the homestead rights of his wife, possibly his conduct may have been such as to estop him, and those claiming under him, from denying the existence of appellant's asserted lien; but as, under our Constitution, the homestead is protected for the benefit of the family, we are satisfied that a married man can not by his own conduct, unparticipated in by his wife, create a lien upon his homestead by conduct which otherwise would operate as an estoppel in pais against him.   If the husband could create a valid lien on the homestead by a mere promise or agreement to apply borrowed money to the payment of a pre-existing lien, without in fact making such application, he could thus indirectly do that which, under the Constitution, he and his wife together can not do directly—incumber the homestead for other than purchase money or money used for its improvement.

The judgment under consideration is affirmed.

*Affirmed.*

Delivered December 5, 1894.