SOPHIE MERGELE ET AL. v. VERONICA FELIX ET AL.

Decided January 16, 1907.

**1.—Subrogation—Vendor's Lien.**

One who discharges the vendor's lien upon land, even the homestead, either by paying as surety or at the request of the debtor, is entitled to be subrogated to the lien of the creditor to the extent of the payment made. An express assignment of the lien is not necessary.

**2.—Same—Homestead—Acts of Wife.**

The wife, having a substantial interest in the homestead, has the right and the power to procure a third person to take up vendor's lien notes on the same, and to contract that he should be subrogated to the rights of the vendor, and this, without the concurrence of her husband.

**3.—Evidence of Debt—Cancellation—Rights of Creditor.**

The fact that a debtor wrongfully obtains possession of his notes and secures a release of his mortgage, will not destroy the rights of the owner of the notes and mortgage. A court of equity will grant the necessary relief.

Appeal from the District Court of Bexar County. Tried below before Hon. Edw. Dwyer.

*Webb & Goeth,* for appellants.—A third person furnishing money to pay off a vendor's lien does not become subrogated to the vendor's lien in the absence of an assignment of the note or an agreement to the effect that he shall become subrogated to such lien. International Bldg. & Loan Assn. v. Hardy, 14 Texas Civ. App., 464; Ruhl v. Kauffman, 65 Texas, 723-736; Gaylord v. Loughridge, 50 Texas, 573; Panill v. Smith, 1 Posey, 99; Pridgen v. Warn, 79 Texas, 594; Dillon v. Kaufman & Runge, 58 Texas, 704; Farmers & Mer. Bank v. Waco Electric Ry. Co., 36 S. W. Rep., 134; Wahrmund v. Merritt, 60 Texas, 24; Price v. Courtney, 56 Am. Rep., 453; Meeker, v. Larson, 57 Law Rep. Ann., 901.

A third person who pays a series of vendor's lien notes without taking an assignment of said notes from the vendor, or who does not take a new note and a lien, occupies the relation of a general creditor only, and does not acquire the lien held by the vendor. Boehl v. Wadgymar, 54 Texas, 591.

A married woman can not create a lien upon a homestead by subrogation without the consent of the husband, and the holder of a vendor's lien note must assign same to a third person paying said note, other-

wise the lien will be waived. Owens v. New York & Texas Land Co., 11 Texas Civ. App., 287.

*W. A. Wurzbach* and *S. C. Eldridge,* for appellees.

JAMES, CHIEF JUSTICE.—The suit is by Veronica Felix, surviving wife of Theodore Felix, and by August J. Zaiontz, the temporary administrator of Theodore Felix, who allege in their amended petition that on October 1, 1897, defendants Adolph Mergele and Sophie Mergele executed to C. Huberich 24 vendor's lien notes upon a lot in San Antonio; that on October 1, 1900, Theodore Felix, at the instigation and request of defendants paid to said Huberich $600 in payment of said notes; that it was agreed and understood between said Felix and said defendants that the former was to become the owner of said notes and to be subrogated to all the rights of the said Huberich therein. That Theodore Felix died on or about March 1, 1903, and his estate is the legal and equitable owner of said notes, and is subrogated to the rights of said Huberich therein, and the prayer was for judgment for the said debt, interest, attorney's fees and costs with foreclosure of lien.

The answer was a general denial, also that the notes had been paid and released while the property of Huberich, also that Sophie Mergele was the wife of Adolph Mergele during the transactions embodied in the petition and not bound by the agreements, etc., therein referred to.

The court submitted the case by charging the jury in substance as follows: 1st. If they believed that Theodore Felix paid $600 to Huberich on or about October 9, 1900, at the instance and request of defendants, and that said money was loaned by Felix to defendants in order to take up said vendor's lien notes, and that at and before said payment· it was understood between defendants and Felix that the latter should be secured in its repayment by the same security held by Huberich, to find for plaintiffs. If, however, the said payment was not made at the instance and request of defendants; or if it was not loaned by Felix and was in payment of a debt due by Felix to defendant Sophie Mergele, to find for defendants.

The deed from Huberich was to Adolph and Sophie Mergele and dated October 1, 1897, reciting the consideration as $475 cash and the balance in 29 vendor's lien notes signed by them, each for $25, one payable every three months with 8 percent interest. It appears that in October, 1900, only six of the notes had been paid and the balance of them amounted to about $600. Mergele and wife were living upon the lot, which fact appears uncontradicted and therefore it was their homestead. On October 5, 1900, the following letter was written by Mrs. Mergele to her brother, Theodore Felix:

"Dear Brother: I am sorry to hear that you are sick, that you can not come yourself and tend to it. But it will be all right, for the notes are mentioned in the deed and the deed is not clear for us as long as the notes are not redeemed, so you will have a good hold on us. I will fix everything all right. The amount of capital is $575, interest, $34.50, so send the check for $600 and we will pay $9.50 so we will get it clear, and the $25 we will pay $5.00 a month, starting right away, until it is paid, for the notes call for only $575, hoping you will send it as soon

as possible so we get through with it. Regards to all, Your Sister, Mrs. S. Mergele."

The next day Theodore Felix sent her a check on the San Antonio National Bank payable to the order of Conrad Huberich for $600, which check was received by Mrs. Mergele, who delivered it to her husband, who delivered it to Huberich, who cashed it. The stub of that check stated, "Six hundred dollars loaned Ad. and Sophie Mergele on vendor's lien note."

In March, 1903, closely following the death of Theodore Felix, a release was obtained by Mergele from Huberich, and he testified that he got the notes and at the time he went to Huberich to get the release he had all of the notes, and when this suit was brought (April 18, 1903), he searched for the notes and could only find the first six of them (those he had paid before the check was sent), and that the others were lost, that Felix never had possession of them nor demanded them. He testified also that when the check came it was given to him by his wife with the statement that it was her share of her father Frank Felix's estate which had been placed in Felix's hands; that he had never agreed that Felix should have the notes nor a lien on the property; that Huberich did not assign the notes to Felix and that he, witness, had consequently secured a release from Huberich. Also that this $600 was a settlement of his wife's interest in her father's estate, and that he was not a party to the letter written by his wife to Felix, that he knew nothing about said letter and never consented to it. He further stated that he knew his wife had been trying to get money from her brother and that she went to St. Hedwig to see Theodore Felix, her brother, to get the money. Upon a cross examination Mergele testified that when he went to see Huberich in 1903, he, Mergele, did not have the notes, and that Huberich had them; Question. "Mr. Huberich had the notes did he? Ans. I suppose so, he signed them and gave them to me. Q. How could he have them when he gave them to you? A. I don't remember whether he had them or not. He signed the notes when I paid him."

There was a verdict for plaintiffs.

The first and third assignments complain of the refusal of the court to instruct a verdict for the defendants, the proposition relied on being that a third person furnishing money to pay off a lien does not become subrogated in the absence of an assignment of the note or an agreement to the effect that he shall become subrogated. The proposition is a familiar one as a general principle. There was no transfer to Felix of the notes or lien. In some jurisdictions it is held that nothing short of an express agreement that a stranger furnishing money to pay off a lien will suffice to continue it in existence for his benefit. That is not the rule generally nor the rule in this State. Our decisions are in consonance with what is stated by Mr. Pomeroy: "The doctrine (of equitable assignment) is also justly extended by analogy, to one who having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment at the instance of the debtor party and for his benefit, for such a person is in no sense a mere stranger or volunteer." (3 Pom. Eq. Jur., sec. 1212.) In Faires v. Cockerell, 88 Texas, 437, the Supreme Court uses this language: "Perhaps the courts of no State have gone further in applying the doctrine of subro-

gation than have the courts of this State of which we cite a few instances: One who discharges the vendor's lien upon lands, even the homestead, either by paying as surety, or at the request of the debtor . . . is entitled to be subrogated to the lien of the creditor to the extent of the payment made." See Oury v. Saunders, 77 Texas, 278.

In the present case, however, the request which brought the check drawn in favor of the holder of the vendor's lien, and which was in effect a payment by Felix of said creditor, was more than a bare request for money to pay off the lien, it (we refer to the letter of Mrs. Mergele) contemplated that Felix would hold the lien in case he complied. This leaves no doubt as to his being entitled to subrogation, unless the fact, that Mrs. Mergele being a married woman was unable by any arrangement of hers without the concurrence of her husband, to bring about a subrogation, which is a question raised by other assignments and will be considered in another place.

Under the second and fourth assignments is presented this proposition: "A third person who pays a series of vendor's lien notes without taking an assignment of them from the vendor, or who does not take a new note and lien, occupies the relation of a general creditor only, and does not acquire the lien held by the vendor." For this reason the assignments say that the peremptory instruction should have been given. Subrogation is recognized in the absence of an assignment, and in the absence of a new note and lien.

The fifth assignment is that the court erred in refusing special charge number 2 because there is no evidence that Sophie Mergele had any authority to make a contract with Theodore Felix creating a lien upon the property in question; she being a married woman could not create a lien upon the real estate without being joined by her husband and without his knowledge. The sixth is that the court should have given special charge 4 for the reason that no lien could be created upon the real estate without the consent of the husband and without an assignment of the notes. The seventh is that there was error in refusing special charge 5, because the letter was not authorized or assented to by the husband and was not binding on him. The seventeenth is that the court erred in the first paragraph of the charge because Sophie Mergele, being a married woman, she can not be bound by any transaction with Theodore Felix.

The undisputed evidence was that this property was the homestead of Mergele and wife; that the notes were a subsisting vendor's lien thereon and many of them were due and unpaid. There was evidence by circumstances from which the jury might have concluded, notwithstanding his testimony, that Mergele understood the proceedings by which his wife procured her brother to send the check, and acted upon and ratified what she had done. We will assume that he did not, but acted, as he says, upon the impression that the check was sent her in connection with her interest in her father's estate. The material question is, was his knowledge and assent necessary to the subrogation?

The wife has a substantial, recognized right in the homestead. True, she can not convey it or make any contract in reference to it without being joined therein by her husband. On the other hand, the husband can not convey it without her joining, nor has he the unrestricted right

to dispose of it for the purpose of settling with the vendor a vendor's lien thereon, unless in doing this he acts in good faith with reference to her right therein. (Roy v. Clarke, 75 Texas, 28; Thompson on Homesteads, sec. 690.)

It would be a strange condition of the law which gives the wife a substantial interest in property and denies her the power in every situation to avail herself of means to protect that right. To hold that in every case her act would be of no effect unless joined or concurred in by her husband, would render her helpless against the destruction of her right where he was unwilling or unable to join or concur. In our opinion in having a right to protect, she had the right regardless of her married relation to do what she did in this case, that is, to procure a third party to pay off the vendor with the view that he should hold the lien. This was not the making of a new contract nor the creation of any lien, for the debt and lien had already been created and the continuance thereof, as it stood, without any increased burden, was the only effect contemplated or effected.

It has been held that one who at the request and for the benefit of a tenant in common of mortgaged premises tenders to the mortgagee the full amount due under the mortgage and requests an assignment thereof, is not a mere volunteer to whom the right of subrogation should be denied. (Simonson v. Lauck, 93 N. Y. Sup., 965.) It would follow that if he had paid off the mortgage under said circumstances without taking an assignment, he would not have been regarded as a mere volunteer. The principle is that any person who has a right to protect in mortgaged property may procure a third person to settle with the mortgagee and thereby take the place of the mortgagee. Upon this principle a married woman, having as such a recognized right in mortgaged premises, as she has in a homestead in this State, ought to be allowed, and we think she has, power to that extent, and a court of equity will give such effect to her act in every proper case. Where her act adds no burden to the property, and works no injury to those interested with her in the property, but simply operates to conserve existing conditions for the benefit of all, a person, who at her instance advances money to pay off the mortgagee, the request contemplating that he will occupy the place of the mortgagee, ought not to be treated as a volunteer. Neither the husband nor the wife has paid the debt, it has been paid by one induced to do so by one of them with the idea that he would have a "good hold" on the property, both defendants have received the benefit of the payment, and it would be inequitable for them to deny the lien because the husband may not have understood the facts. For these reasons the assignments referred to and also the propositions under the ninth, tenth, fourteenth and fifteenth are not sustained.

The eighth, eleventh and sixteenth relate to testimony of the plaintiff Veronica Felix, she being allowed to state conversations between Mrs. Mergele and Theodore Felix about a week before the check was sent, with reference to borrowing $600 to pay off these vendor's lien notes, begging him for a loan for that purpose. We need not discuss the propriety of this testimony under our statute, because the same testimony in effect appears from the letter which she wrote to her brother, which letter was undisputed, and therefore no harm could have come from her

said testimony. The letter itself was an urgent appeal to her brother for that amount to pay off what the letter and the other evidence shows unmistakably were the vendor's lien notes existing on this property.

The twelfth is that the first paragraph of the charge submitted the question whether or not "it was understood between defendants and Theodore Felix that the latter should be secured in the repayment of said $600 by the same security held by Huberich" when there was no evidence of any such understanding between him and Adolph Mergele. We have already concluded that an understanding with the wife alone was sufficient for the purpose, and therefore the charge was more liberal to appellant than was necessary. However, there was testimony that would support a finding that he so understood. It was singular conduct on his part to not take a release when he handed Huberich the check, or to not take the notes, as there was evidence to show he did not, if he in fact believed that the money was his wife's property and that he was in reality terminating the debt. It is also a significant fact that while Felix lived he did not seek to get the notes, nor a release, but he did so as soon as Felix was dead. The intimate relations that naturally exist between the husband and wife would go far in view of the above circumstances towards an inference that the husband knew just what his wife had done.

The thirteenth assignment complains of the same paragraph of the charge in that it instructed that the jury could find for the plaintiff with foreclosure of lien, although Huberich never delivered the notes to Felix, and although Huberich executed to defendants a release of the lien. Huberich might have delivered the notes and a release of the lien, to defendants, still this would be no obstacle in the way of a court of equity. in continuing the debt and lien in favor of Felix if conditions existed which required it.

*Affirmed.*

Writ of error refused.