**HENDERSON et ux. v. HAWLEY et al.
(No. 2492.)**

(Court of Civil Appeals of Texas. Texarkana. Feb. 2, 1922.)

**1. Pleading ⬥204(2)—General demurrer to petition in its entirety properly overruled when one count good.**

In trespass to try title, a general demurrer to the petition in its entirety, containing two separate counts, one of which expressly averred title in fee simple, and specially and affirmatively prayed for the recovery of the land, was properly overruled.

**2. Vendor and purchaser ⬥257—Grantor reserving lien is owner of superior title, and can convey it to another.**

A grantor expressly retaining a vendor's lien to secure payment of a purchase-money note until the money was paid was the owner of the superior legal title to the land, and could convey such title to another.

**3. Vendor and purchaser ⬥267—Vendor's superior title vested in vendee if note paid by vendee and lien released or note paid by another consenting to such release.**

If a purchase-money note to secure which a vendor's lien was reserved was paid by the vendee, and the lien released by deed, or if a third person buying or paying the note by agreement with the vendee agreed to the release by deed, the original vendor's superior

title was thereby vested in the vendee, and a deed subsequently made by the original vendor conveyed no title.

**4. Vendor and purchaser ⬥267—Lien not discharged when deed of release induced by false representations.**

If a person buying or paying a vendee's note under an arrangement with the vendee paid the money for the sole purpose of taking over the note and did not agree to release or waive the lien and the vendee, by the false and fraudulent representation that he himself was paying the note, induced the writing and recording of a deed of release, the lien was not thereby discharged.

**5. Vendor and purchaser ⬥265(1)—Transaction whereby third person furnished money to pay lien note held sale, with amount of note to be applied on price.**

Where plaintiff agreed with a vendee who was unable to pay a vendor's lien note that she would buy or pay off the note, and pay the vendee $100 for a conveyance of the land, she was not a mere volunteer paying off the indebtedness, or a mere lender of the money, and the transaction amounted to an agreement to buy the land and have the vendor's lien note constitute a part of the purchase price.

**6. Vendor and purchaser ⬥267—Evidence held to warrant inference that purchaser was to hold lien of former vendor until conveyance.**

Where plaintiff agreed with a vendee who was unable to pay a vendor's lien note to buy or pay off the note, and pay the vendee $100 for a conveyance, evidence *held* to warrant the inference that until the conveyance she was to own and hold the lien.

**7. Subrogation ⬥31(5)—Vendor and purchaser ⬥261(6)—Lien not discharged where third person bought or discharged note by agreement with vendee.**

Where plaintiff agreed with a vendee to buy or pay a vendor's lien note, and pay the vendee $100 for a conveyance, and did pay the amount of the note and received the note, even though there was no express agreement that she was to be the owner and holder of the lien, the lien, under the doctrine of equitable assignment or subrogation, would not be discharged.

**8. Appeal and error ⬥880(1)—Defendant not entitled to complain of rendition of costs against sureties on a replevin bond.**

In trespass to try title, defendant cannot assign error on the rendition of court costs against the sureties on a replevin bond; that being a matter for the sureties to complain of.

Appeal from District Court, Upshur County; J. R. Warren, Judge.

Suit by Callie Hawley and husband against Jim Henderson and wife. From a judgment for plaintiffs, defendants appeal. Affirmed.

The action is by the appellee Callie Hawley, joined by her husband, against appel-

lants Jim Henderson and wife, in the form of trespass to try title to 43½ acres of land. She alleged that:

"On or about the 29th day of December, 1920, she was lawfully seized and possessed of the following described land, holding and claiming the same in fee simple: [Here follows description by metes and bounds.]"

The petition then contains the further allegations that:

"She is the legal owner and holder of a certain unpaid vendor's lien note that was executed by the defendant and payable to the Farmers' State Bank of Big Sandy, for the sum of $480 with interest from its date of December 27, 1917, and attorney's fees"

—setting up the facts under which she paid for and acquired the vendor's lien note from T. H. Glezen, "the then owner and holder of the vendor's lien note," and that on November 5, 1920, the defendant procured by false and fraudulent representation to the attorney and agent of T. H. Glezen a release in writing of the vendor's lien, and on the same day had the same placed of record in the deed records of the county. The prayer was for judgment for the title and possession of the land, and for a cancellation of the deed and record of release of the lien that was executed and placed of record.

The defendants filed a demurrer and special exceptions to the petition, and answered by a plea of not guilty.

The case was tried before the court without a jury, and after hearing the evidence the court entered a judgment in favor of the plaintiff Callie Hawley for the land sued for, and for the cancellation of the release deed and the record thereof, upon the ground that it was wrongfully obtained through false and fraudulent representation.

In the trial of the case it was agreed by the counsel of the several parties that the Farmers' State Bank of Big Sandy is the common source of title. And it appears in the evidence that the Farmers' State Bank of Big Sandy, being at the time owner of the land in suit, on December 27, 1915, executed to Jim Henderson a deed to the land for the recited consideration of $400 cash and a note for $480, of even date with the deed, payable to the Farmers' State Bank of Big Sandy, bearing 10 per cent. interest per annum from date, and providing for attorney's fees if placed in the hands of an attorney for suit or collection, and due October 15, 1918. The note and the deed both expressly retained the vendor's lien to secure the payment of the note. At a time subsequent, the date not appearing, the Farmers' State Bank of Big Sandy sold and delivered the note to T. H. Glezen. The defendant Jim Henderson having failed to pay the note and interest, or any part of it, Mr. T. H. Glezen shortly before November 5, 1920, placed the same in the hands of an attorney for collection. The

attorney then notified Jim Henderson, and pressed payment of his note. Jim Henderson, being unable to pay off the note, agreed with Callie Hawley as follows: Callie Hawley was "to buy or pay off the note held by T. H. Glezen and pay Jim Henderson $100 cash, and Jim Henderson was then to deed the land to Callie Hawley as her separate property." Callie Hawley at the time of the agreement paid Jim Henderson $25 cash of the $100. After making the agreement Callie Hawley and Jim Henderson went together to the office of the attorney holding the note for collection, and there, as admittedly shown by the evidence, Callie Hawley paid over to the attorney in cash the amount of the note and interest to date, which was $669.85. She had lately gotten the money as her part of her father's estate under administration. The attorney accepted the money for Mr. Glezen; and, according to the testimony of Callie Hawley, which is undenied in the record—

"the note came from Mr. Glezen, and the note was turned over to me the same day I paid the money; it was turned over to me by Jim Henderson himself, at my home, after we returned from Gilmer. Jim got the note from Mr. Glezen."

Callie Hawley further testified, and it is not denied in the record:

"I paid the money before I got the note because I was buying the note. I paid the money and did get the note, and I got the note the same day I paid the money. I had bought the note and I wanted to get it."

It was proven that after Callie Hawley had paid the money to the attorney she asked Jim Henderson to make a conveyance of the land to her, and at the same time stated, "I will pay you [the balance of the] one hundred dollars," but that Jim Henderson did not and has not made the deed. And upon failure of Jim Henderson to make the deed or pay back the money to Callie Hawley, the Farmers' State Bank of Sig Sandy on December 27, 1917, and in consideration of the sum of $1 executed and delivered to Callie Hawley a written conveyance, duly acknowledged, of "all the right, title, and interest" of the bank to the land in suit. Plaintiff afterwards filed this suit.

It was proven by the plaintiff that on November 5, 1920, a written instrument releasing and discharging the vendor's lien note was executed and duly acknowledged by T. H. Glezen acting through an agent holding a general power of attorney, and that the instrument was delivered to Jim Henderson and was by him on the same date placed of record in the deed records. The release deed was executed to Jim Henderson, and recited payment in full of the note. There was no agreement of release or waiver of the lien on the part of the plaintiff Callie Hawley. And there is proof sufficient to support the trial

court's finding of fact, here adopted, that Jim Henderson induced the belief, and by his conduct encouraged the writing and delivery of the release deed by the false and fraudulent representation, that he himself was paying off the note, and that it was his money that had been paid. The defendants offered no proof beyond cross-examination of the plaintiff's witnesses. The fraudulent release deed and record thereof was a cloud upon the title of the plaintiff as, in effect, claimed by her.

Florence, Florence & McClelland, of Gilmer, for appellants.

T. H. Briggs, of Gilmer, and C. G. Engledow, of Pittsburg, for appellees.

LEVY, J. (after stating the facts as above). The appellants' propositions, based on proper assignments of error, are:

(1) That it was error for the court to overrule the general demurrer to the petition.

(2) The evidence does not show that the release of the vendor's lien was obtained through false and fraudulent representations, but that the evidence conclusively establishes the mutual intention and agreement of the parties to have the release and cancellation of the vendor's lien made, executed and recorded.

(3) That the evidence establishes an express agreement between the parties of purchase and sale of the land, and that in legal consequence of the agreement Callie Hawley is remitted to a suit in specific performance, as her only remedy, of the contract to convey the land.

(4) That the vendor's lien having been released by deed, the superior title retained by the original vendor of the land was thereby vested in Jim Henderson, the original vendee, and the deed subsequently made by the Farmers' State Bank of Big Sandy, the original vendor, to Callie Hawley, conveyed no title to her giving the right of suit in trespass to try title.

[1] The general demurrer was directed to the petition in its entirety, and the court overruled such demurrer, and we think there is no reversible error in the ruling. The petition had two separate and distinct counts, one of which expressly averred title to the land to be in the plaintiff "in fee simple," and wherein she specially and affirmatively prayed for the recovery of the land. Wherefore a general demurrer did not, we conclude, lie to the petition in its entirety, and the court could not have sustained it. Any other question in respect to the petition is not presented, and the proposition and assignments of error are overruled.

It is believed that the other propositions, and the assignments of error on which they are predicated, should each be overruled. Upon the issue of title the appellee introduced a deed to her from the Farmers' State Bank of Big Sandy conveying "all the right, title, and interest" of the bank to the land in suit. The bank was the agreed common source of title. A deed was then introduced from the Farmers' State Bank of Big Sandy to Jim Henderson, the defendant, showing on its face a conveyance of the land in consideration of $480 evidenced by his note and a vendor's lien expressly retained to secure its payment. The note was then introduced, with proof of its acquisition by appellee for a valuable consideration from the then legal owner and holder of the same, and that it was due and unpaid by Jim Henderson, the maker.

[2-4] There does not appear in the record any denial on the part of Jim Henderson that he executed the note, nor that he had not paid the same. And the legal effect attaching to such evidence is to authorize a judgment in favor of the appellee for a recovery of the land. For the Farmers' State Bank of Big Sandy was the owner of the superior legal title to the land, in virtue of having expressly retained the vendor's lien to secure payment of the purchase-money note, until the money was paid. Hamblen v. Folts, 70 Tex. 132, 7 S. W. 834; Howard v. Davis, 6 Tex. 174; Dunlap v. Wright, 11 Tex. 600, 62 Am. Dec. 506. And the Farmers' State Bank of Big Sandy could convey such title to appellee. Ellis v. Hannay, 64 S. W. 684; White v. Cole, 87 Tex. 500, 29 S. W. 759. And the state of her title would then entirely depend upon the further question of whether or not in the evidence it conclusively appears that Jim Henderson, before the date of the conveyance of the bank's superior title to appellee, had paid off and discharged the vendor's lien note to T. H. Glezen, or that at the time of the payment of the money to the attorney of T. H. Glezen there was an agreement either in point of fact or in legal effect on the part of the appellee and the appellant of a release or waiver of the lien on the land. For it would be legally correct, as contended by appellant, that, if the purchase-money note had been paid by appellant, and the lien released by deed, or appellee had agreed to the release by deed, the superior title of the original vendor was thereby vested in appellant, and the deed subsequently made by the original vendor conveyed no title to appellee such as to give the right to maintain trespass to try title. But there is involved the judgment of the court that such facts did not exist, and there is evidence, we think, to support such findings of fact. The evidence is undisputed that it was the appellee's money, inherited by her from her father's estate, that was paid over to the attorney, and that she in person paid it over to the attorney. Jim Henderson, under the admitted proof, did not have the money with which to pay the note, and did not himself make payment of the note. The appellee, according to her testimony, which is undenied, paid over her money to the attorney for the sole purpose of taking over the purchase-money note, and there is no evidence to show or have the ef-

fect of showing an agreement on her part to release or waive the lien on the land. And, further, there is sufficient evidence to support a finding of fact, as made by the court, that the appellant induced the belief, and by his conduct encouraged the writing and recording of the release deed, by false and fraudulent representation that he himself was paying off the note, and that it was his money that was being used to discharge the note and interest. But for the conduct and representations the release would not, it appears, have been executed and delivered to appellant. A release deed or waiver of a vendor's lien procured by fraud or fraudulent representations will not discharge such lien. Thompson v. Elmore (Ky.) 18 S. W. 235. And the lien not being in fact released, and the release deed, being obtained by fraudulent representations, not legally operating, as between all the parties, to release the vendor's lien, the vendor's lien is left to stand with its attendant right of lien in the holder of the purchase-money note.

[5-7] Upon the part of the appellant, however, it is further insisted that relief should be denied appellee in a suit of trespass to try title, in virtue of the agreement of purchase and sale of the land made between appellee and appellant. In this respect there is evidence to show that Jim Henderson was pressed by the attorney of Mr. Glezen for payment of the note, and, being unable to pay off the note, agreed with Callie Hawley, the appellee, as follows: Callie Hawley was to buy or pay off the note and pay Jim Henderson $100 cash, and Jim Henderson was then to deed the land to Callie Hawley as her separate property. Callie Hawley at the time of the agreement paid Jim Henderson $25 of the $100. Callie Hawley paid the full amount of the note over to the attorney, and, as she testifies:

"The note was turned over to me the same day I paid the money; it was turned over to me by Jim Henderson himself at my home after we returned from Gilmer. Jim got the note from Mr. Glezen."

She further testified:

"I paid the money before I got the note because I was buying the note. I got the note the same day I paid the money. I had bought the note and I wanted to get it."

The appellant did not deny the evidence quoted above. And the evidence further shows that appellant did not make a conveyance to appellee of the land. The evidence does not place the appellee in the position of a mere volunteer paying off the indebtedness of the appellant, and neither does it show her to be a mere lender of the money to pay the note. The evidence shows rather an agreement on the part of appellee to buy the land from the appellant and have the vendor's lien note be a part of the purchase price. She was not to have a deed from Jim Henderson until after she had paid him $100 and had bought or paid Glezen for the note. And the further testimony is consistent with the fact, as involved in the court's judgment, that appellee was to acquire the vendor's lien note with the understanding that she was to succeed to and hold the vendor's lien until a conveyance was made. Jim Henderson himself delivered the note over to appellee the same day of payment by appellee, having obtained same from Mr. Glezen. Appellee's testimony shows that it was her purpose and intention to buy the purchase-money note, and not to cancel the lien, and Jim Henderson's acts in respect to the note would strengthen the conclusion that there was not to be a cancellation or release of the lien until such subsequent time when the deed should be executed and delivered by him to appellee. An agreement is inferable that in the interim appellee was to be and was the owner and holder of the lien. But if an express agreement did not exist in that respect, still, on the facts, the doctrine of equitable assignment or subrogation applies, and the lien would not, as between the parties, be discharged so as to make ineffective the deed from the original vendor, the Farmers' State Bank of Big Sandy. 25 R. C. L. p. 1351; 37 Cyc. p. 476; Mustain v. Stokes, 90 Tex. 358, 38 S. W. 758; Roy v. Clarke, 75 Tex. 28, 12 S. W. 845.

[8] Appellant assigns as error the rendition of court costs against the sureties on the replevin bond. This is a matter for the sureties to complain of, and they do not appeal and complain. Therefore the assignment is overruled.

Concluding that the judgment in favor of appellee is a meritorious one, and without reversible error appearing, the same is affirmed.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes