### JONES v. MOORE et al. (No. 3304.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 3, 1926. Rehearing Denied Dec. 23, 1926.)

1. **Homestead ⬅⟹99—Lien cannot be created on homestead to secure loan for any purpose other than to pay purchase money (Const. art. 16, § 50).**

Under Const. art. 16, § 50, a lien may not be acquired on land constituting borrower's homestead to secure loan for any other purpose than to pay purchase money.

2. **Subrogation ⬅⟹23(6)—Lender has vendor's lien on homestead for part of loan used to pay purchase-money note, which borrower represented was to be paid therewith.**

Lender has vendor's lien on homestead as security for money loaned, as to that part of purchase-money note which was unpaid and which borrower represented that he wished to take up with money loaned.

3. **Subrogation ⬅⟹23(6)—Recitals in note of security by vendor's lien held to authorize foreclosure on homestead for portion used to pay purchase-money note.**

Admission in evidence of notes containing recitals that they were renewals of purchase-money notes, and secured by vendor's lien, *held* to entitle holder to foreclosure of lien on homestead for such portion as was used to take up purchase-money note, in absence of proof showing contrary to such recitals.

4. **Subrogation ⬅⟹23(6)—Lender had vendor's lien on homestead for unpaid balance of purchase-money note taken up with proceeds of note.**

Under evidence showing that portion of money evidenced by note, reciting that it was secured by vendor's lien, was used to take up purchase-money note on homestead, holder *held* to have acquired vendor's lien to such extent.

Error from District Court, Fannin County; George P. Blackburn, Judge.

Suit by John W. Jones against J. O. Moore and others. From the judgment, plaintiff brings error. Judgment reformed and affirmed.

This suit, by plaintiff in error, John W. Jones, against defendants in error, J. O. Moore, N. E. Moore, and the First National Bank of Windom, was to recover the amount of a promissory note for $1,610.63, interest and attorney's fees, dated December 7, 1922, payable to the order of said Jones January 1, 1924, and the amount of two other promissory notes, one for $1,400 and interest, and the other for $105 and interest, dated December 5, 1918, payable to the order of Pearson & Taft January 1, 1924, and by them transferred to said Jones on June 5, 1924. Jones claimed that the three notes were secured by a vendor's lien on 42 acres of the David White survey in Fannin county, and he sought a foreclosure of such a lien. The judgment was in his favor against J. O. Moore for the amount of the promissory notes, found to be $3,892.72, and in his favor against said J. O. Moore and N. E. Moore, foreclosing the lien asserted, so far as it was claimed against the land to secure the amount, to wit, $1,938.70, of the $1,400 and $105 notes. The court determined that a lien to secure the $1,610.63 note did not exist against the land, and refused to foreclose the lien asserted by Jones so far as it was claimed to secure that note. The complaint on this appeal is predicated entirely on such refusal.

It appears from the record sent to this court that, by a deed dated September 19, 1913, W. M. Rayburn and his wife conveyed the 42 acres against which Jones claimed the

vendor's lien to J. O. Moore—the consideration for the conveyance being $700 then paid to the Rayburns and said J. O. Moore's promissory note dated said September 19, 1913, for $2,450 payable January 1, 1914, to said W. M. Rayburn's order. The payment of the note was secured by a vendor's lien expressly retained on the land. Afterward Pearson & Taft became the owners of $1,400 of the $2,450 note and F. J. Underwood became the owner of the remaining $1,050 thereof, and on December 26, 1913, in pursuance, it seems, of an agreement between the parties concerned, Moore executed two notes in lieu of the $2,450 note—one of the two being for $1,400, payable to said Pearson & Taft, and the other for $1,050 and interest at the rate of 10 per cent. per annum from January 1, 1914, payable January 1, 1915, to the order of said Underwood. The $1,400 note sued upon was a renewal and extention of said note for $1,400 executed by J. C. Moore December 26, 1913, as stated, and the $105 note sued upon seems to have been for interest which accrued on the last-mentioned $1,400 note. As no complaint is made of the judgment on account of the $1,400 and $105 notes sued on, it will not be necessary to again mention them.

December 26, 1917, J. O. Moore executed a note whereby he promised to pay $1,000 to the order of Jones January 1, 1919. It appeared from recitals in the note that it was for part of the purchase price of the 42 acres, was "in renewal and lieu of" the note for $1,050 made to Underwood December 26, 1913, as hereinbefore stated, and was secured by a vendor's lien on the 42 acres of land. By an instrument in writing dated December 26, 1917, duly acknowledged January 5, 1918, and filed for record in Fannin county January 7, 1921, the lien and time for payment of said $1,050 note to Underwood, dated December 26, 1913, was extended "for a period of one year from January 1, 1918, to January 1, 1919." December 7, 1922, said J. O. Moore and N. E. Moore executed a note whereby they promised to pay $1,610.63 to the order of Jones January 1, 1924. It appeared from recitals in the note that it was for a part of the purchase price of the 42 acres, was in renewal and lieu of said $1,050 note to Underwood, dated December 26, 1913, and of said $1,000 note to Jones, dated December 26, 1917, and was secured by a vendor's lien on the land. By an instrument in writing dated said December 7, 1922, duly acknowledged and filed for record in said county on the day of its date, the lien and time for payment of said note, dated December 26, 1917, was extended for a period of one year from January 1, 1923, to January 1, 1924.

Jones claimed that the $1,000 note of December 26, 1917, and the $1,610.63 note of December 7, 1922, made to him, above referred to, were, as they purported to be, renewals of the $1,050 note of December 26, 1913, made to Underwood, and were secured, as was the last-mentioned note, by a vendor's lien on the 42 acres of land. Testifying as a witness, Jones said that about December 26, 1917, J. O. Moore requested him to take up a $1,000 note he (Moore) owed, and which he represented to be secured by such a lien; that he told Moore to see his (Jones') attorney, Mr. Baldwin, about the matter, and that, if Baldwin said it was all right, he would comply with Moore's request; that Moore afterwards gave him the $1,000 note; and he gave Moore $1,000. J. O. Moore, testifying as a witness, said that in 1917 Jones let him have $1,000 to pay off the $1,050 note to Underwood, and that he (Moore) executed and delivered the $1,000 note of December 26, 1917, to Jones, that he did not think the note was a "renewal and extention" of the $1,050 note, but that he represented to Jones it was. He said he had paid $250 on the $1,050 note before he applied to Jones for money to take it up. He did not say when nor how the remainder of the note was paid, but said it had been in his possession since 1917. The note was produced by Moore at the trial and admitted as evidence. It appeared from indorsements on it that $250 of the principal of the note and interest thereon to January 4, 1916, had been paid. Moore testified further that the 42 acres of land was his homestead at the time Jones let him have the $1,000 as stated. He testified further, with reference to indebtedness of $1,600 claimed by said First National Bank of Windom against him, that same originated with a promissory note executed by him March 25, 1921, which was secured by a valid lien against said 42 acres of land. The findings of the trial court were not reduced to writing and filed with the record as they might have been, and this court therefore is not informed as to the grounds of that court's conclusion that Jones was not entitled to assert a vendor's lien on the 42 acres of land to secure the payment of the $1,610.63 note, or any part thereof, sued upon. It is assumed that the ground upon which that court acted was either that it appeared that the $1,050 had been fully paid at the time Jones let Moore have the $1,000, or that, if said note had not then been paid in full, Moore did not use the money he obtained from Jones in paying it.

Wright & Baldwin, of Paris, for plaintiff in error.

Cunningham & Lipscomb, of Bonham, for defendants in error.

WILLSON, C. J. (after stating the facts as above.) Jones' contention here is that it appeared the $1,610.63 note he sued upon was secured by a valid and subsisting vendor's lien on the 42 acres of land, and that the court therefore erred when he refused to foreclose such a lien in his favor. The con-

tention of the Moores, husband and wife, and the bank to the contrary is on the theory, it seems, that it appeared the $1,050 note, of which the $1,610.63 note was a renewal, had already been paid at the time Jones let J. O. Moore have the $1,000 to pay it, that the 42 acres was then the homestead of the Moores, and that the lien claimed by Jones therefore was not a valid one.

[1] We think it is true, if the land was homestead at the time Jones let Moore have the $1,000, and if the $1,050 note to Underwood had then been paid, that Jones did not acquire a lien on the land securing the repayment of the $1,000 to him, for the Moores could not create a lien on land constituting their homestead, and which they were using as such, to secure a loan to them for any other purpose than to pay purchase money thereof. Section 50 of article 16 of the Constitution; Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; Wingate v. Loan Ass'n, 15 Tex. Civ. App. 416, 39 S. W. 999.

[2] On the other hand, if any part of the purchase money represented by the note to Underwood for $1,050 was unpaid at the time Jones let Moore have the $1,000, and the latter used same in paying such part of said $1,050 note, then Jones had a vendor's lien on the land as security for the payment of the part of the $1,000 included in the note made by Moore December 26, 1917, and in the note for $1,610.63 sued upon, which, as hereinbefore stated, was a renewal of said $1,000 and $1,050 notes; for it was undisputed in the testimony that Jones was induced to let Moore have the $1,000 because of his reliance upon Moore's assurance that the money was to be used in taking up a note secured by a vendor's lien on the 42 acres, and that Jones was to be subrogated to that lien. Mortg. Co. v. Taylor (Tex. Com. App.) 212 S. W. 647; Henderson v. Hawley (Tex. Civ. App.) 237 S. W. 341; Kangerga v. Willard (Tex. Civ. App.) 191 S. W. 195; Thomas v. Ash (Tex. Civ. App.) 199 S. W. 670; Hicks v. Morris, 57 Tex. 658; Kallman v. Ludenecker, 9 Tex. Civ. App. 182, 28 S. W. 579; Bellamy v. Mort. Co. (Tex. Com. App.) 278 S. W. 180; Mergele v. Felix, 45 Tex. Civ. App. 55, 99 S. W. 709; Hatton v. Lumber Co., 57 Tex. Civ. App. 478, 123 S. W. 163.

[3] As is shown in the statement above, it appeared from recitals in the $1,000 note made to Jones December 26, 1917, and the $1,610.63 note made to him December 7, 1924, that those notes were renewals of the $1,050 note to Underwood for part of the purchase money Moore agreed to pay the Rayburns for the 42 acres of land, and that payment thereof was secured, as was said $1,050 note, by a vendor's lien expressly retained on the land. Hence when said notes for $1,000 and $1,610.-63 were admitted as evidence Jones' contention that they were secured by a vendor's lien on the 42 acres was prima facie established, and he was entitled to a foreclosure of such a lien for at least the $800 and interest thereon from January 4, 1916, unpaid, on the $1,050 note December 26, 1917, when he let Moore have the $1,000, in the absence, as we think was the case, of proof showing the truth to be to the contrary of such recitals. Mustain v. Stokes, 90 Tex. 358, 38 S. W. 758; Neese v. Riley, 77 Tex. 348, 14 S. W. 65. The Moores and the bank insist that such proof was not absent, and in support of that view refer to testimony showing that the $1,050 note was due January 1, 1915, and had been in J. O. Moore's possession "since 1917." They argue that under such circumstances it should be presumed that the $1,050 note had been paid before December 26, 1917, when J. O. Moore borrowed money of Jones to pay it. We do not think such a presumption should be indulged in the face of the testimony of J. O. Moore that he borrowed the $1,000 of Jones to use in paying off the $1,050 note, and in face of the fact that, testifying as a witness, he did not say when nor how the $1,050 note was paid, nor deny that it was paid with the money he obtained from Jones.

[4] It follows from what has been said that we think it appeared that $800, and interest thereon at the rate of 10 per cent. per annum as stipulated for, of the $1,050 note to Underwood remained unpaid December 26, 1917, when Jones let J. O. Moore have the $1,000, and that, as said $800 and interest amount on said December 26, 1917, to $953.33, Jones then acquired a vendor's lien on the 42 acres of land to secure the repayment of that much of the $1,000 he let J. O. Moore have, as well as to secure the two notes to Pearson & Taft. It seems, therefore, that the vendor's lien claimed by Jones should have been foreclosed for $3,814.23, instead of for $1,938.70 of the $3,892.72 found to be due Jones by J. O. Moore. The judgment will be reformed accordingly, and, as reformed, will be affirmed.