## No. 5871.

## M. E. FEARS ET AL. *v.* C. P. ALBEA ET AL.

1. SUBROGATION.—One having an interest in a debt who in pursuance of an agreement between himself and the debtor discharges the debt, even before it is due, is thereby subrogated to the rights of the creditor. If he should discharge a debt secured by prior mortgage, he is thereby sub-rogated to the right of the prior mortgagee to enforce repayment of the debt, and this, in the absence of a formal transfer of the mortgage. He will hold the title secured as against subsequent incumbrances, and this, when he has acquired the equity of redemption.

2. SAME.—If one advancing money to pay on a mortgage under an agreement with the owner of the equity of redemption that it should be assigned to him as security for the money advanced, takes a discharge of the mortgage, he is still entitled to be subrogated to the rights of the mortgagee, and have the discharge vacated.

3. EQUITY.—Equity will not permit the rights of a party to be lost through mistake, or ignorance of a fact, when the relief can not operate to the prejudice of third parties.

4. PLEADING.—When from an inspection of an entire plea it is manifest that a wrong name has been written through mistake, and it is obvious what name was intended, without looking beyond the plea itself, the error is immaterial.

5. NEW TRIAL.—A new trial will not be granted on the ground of surprise, because of the testimony of a witness, being different from what counsel understood from the witness before the trial would be his testimony, when there was no evidence of an intention on the part of the witness to deceive.

6. NEW TRIAL.—A new trial will not be granted to enable one to procure evidence which ordinary diligence would have secured on the trial, · especially when it is cumulative.

APPEAL from McLennan. Tried below before the Hon. B. W. Rimes.

This was an action of trespass to try title, brought by M. E. Fears et al. against C. P. Albea, et al. to recover the southeast half of lots 4, 5, 6 and 7 in block 29, in Waco. The character of the issues involved is apparent from the opinion.

*Surratt & Taylor,* for appellant: That the payment of a debt by one who is himself personally and primarily liable operates ipso facto as an end of a mortgage executed to secure

the debt, and the lien is completely, and for all purposes, destroyed, they cited Duty v. Gresham, 12 Texas, 427; 2 Pomeroy on Equity Jurisprudence, section 797 and notes 1 and 2; 3 Pomeroy on Equity Jurisprudence, section 1213 and note.

That a person paying off the mortgage of another can not be subrogated to the rights of the mortgagee against the mortgaged premises, if prior to such payment he was at liberty to elect, without loss, whether he would or would not make such payment, they cited 3 Pomeroy on Equity Jurisprudence, section 1212 and notes 1 and 2; Shinn v. Budd, 14 New Jersey Equity, 234; Sanford v. McLean, 3 Paige, N. Y., 117; Webster's Appeal, 86 Pennsylvania State, 409; Swan v. Patterson, 7 Maryland, 164; Gadsden v. Brown, Speers on Equity, S. C., 37, 41.

That, to establish a subrogation, the original debt to Richey must have been at least extinguished by Albea, they cited The Texas & St. Louis Railway v. James McCaughey, 62 Texas, 271; Ellsworth v. Lockwood, 42 New York, 89, 97.

That the Richey debt and lien could not have been equitably assigned and transferred to Mrs. Albea without his (Richey's) knowledge or consent, and without him being a party to the transaction, they cited The Texas & St. Louis Railway v. James McCaughey, 62 Texas, 271; Virginia v. Chesapeake & Ohio Canal Company, 32 Indiana, 501, 546; Swan v. Patterson 7 Maryland, 164; Twombly v. Cassidy, 82 New York, 155; Baker v. Terrell, 8 Minnesota, 195; Bisop v. Ogden, 9 Pennsylvania, 524.

That Riviere and his wife were necessary parties, they cited Slaughter v. Owens, 60 Texas, 671, 672; Black v. Black, 62 Texas, 296.

That the trustee, Williams, in the Richey deed of trust, was a necessary party in the action by the defendants to foreclose the lien therein, they cited Texas Land Law, by Hobby, section 1493; Storey's Equity Pleadings, section 94, et seq.

That a new trial should have been granted because plaintiff's counsel were misled by the witness Wallace, they cited Delmars v. Margo, 25 Texas, 1; 3 Graham & Watson on New Trials, 953; Wilson v. Brandon, 8 Georgia, 128.

*Anderson & Flint,* for appellees.

MALTBIE, PRESIDING JUDGE.   The first question in this case is, whether Mrs. Mary Albea, who purchased the land in contro-

versy from J. M. Riviere and wife subsequent to a deed of trust, executed by Riviere to Eugene Williams, on the eighth day of August, 1881, and not recorded, to secure a note for fifteen hundred dollars, made by Riviere, payable to James R. Richey, of the date of the trust deed, payable on the eighth day of August, 1887, and also subsequent to another deed of trust made by said Riviere to J. D. Wallace on the same land, dated on the sixteenth day of September, 1881, and recorded on the day following, to secure a note executed by said Richey to Mrs. M. E. Fears, on the same day as the deed of trust, and payable on the sixteenth day of September, 1882, having furnished the money to Riviere to pay off the note held by Richey, and the money, having been so applied by Riviere before the note fell due, can be subrogated to the rights of Richey in the deed of trust held by Williams for his benefit, without any agreement with Richey to that effect? The district court found as a fact that at the time C. P. Albea purchased the land for his wife, that it was agreed between Albea and Riviere that Riviere should take the money paid by Albea and pay off the note to Richey, and have it and the deed of trust on the land in dispute transferred to Mrs. Albea, and that the note was paid off by Riviere with the money so received before it became due, but that there was no transfer made by Richey, and that he had no knowledge of the agreement between Albea and Riviere in reference thereto.

The evidence shows that the money was not paid to Richey, in person, he being absent at the time, but to his partner, who received it for him, and delivered the note and deed of trust to one Hearn, who advanced two hundred and fifty dollars towards the payment on Albea note, and held the Reviere and Richey note and deed of trust as collateral security; and that afterwards Albea paid Hearn the two hundred and fifty dollars, and that Hearn then delivered the note and deed of trust to Reviere, the debt having been paid in full, and that Reviere sent them by mail to Albea, but they were lost. In the case of Fievel v. Zuber, 67 Texas, 280, it is said that there are numerous decisions, quite a number of which are cited, which recognize the doctrine that, if a third party (a volunteer), pay the entire debt in pursuance of an agreement between him and the debtor, upon his doing so, he shall be subrogated to the creditor's rights; and that there are no known decisions to the contrary except in the State of Louisiana, where the matter is regulated by statute. We think this rule founded upon princi-

ples of equity and material right. Every man in this country has the right to dispose of his property or any interest he may own, however slight, in such property, and any rule that would prevent or clog the alienation of incumbered property at private sale, would be very prejudicial to the debtor, inasmuch as it would result in subjecting this character of property to forced sale in many instances, when if purchasers had the right by paying off prior incumbrances to be subrogated to the rights of the creditor holding such incumbrances, the sacrifice of property could often be prevented, while by such an arrangement subsequent creditors could not possibly be damaged.

It is said upon high authority, that when a mortgage is paid by one who is under no obligations to pay it, although he does not take a formal assignment, he is subrogated to the rights of the mortgagee in the mortgaged property, and holds the title so acquired against subsequent incumbrances; although he had also acquired the equity of redemption. In such case no proof of intention on his part to keep the mortgage alive is necessary to give him the benefit of it. Even if a person advancing money to pay a mortgage under an agreement, with the owner of the equity of redemption that it should be assigned to him as security for the money advanced, takes a discharge of the mortgage, he is entitled to be subrogated to the rights of the mortgagee, and have the discharge vacated. (1 Jones on Mortgages, section 877, and authorities there cited.) In general any person having a subsequent interest in the premises which are not primarily liable for the mortgage debt, who pays off the mortgage, thereby becomes an equitable assignee of it, and may keep the mortgage alive and enforce the lien for his own benefit. (3 Pomeroy's Equity, sec. 1212.)

In this case Riviere had the legal title to the property, and the right to pay off all incumbrances against it; having conveyed his interest to Mrs. Albea she would be entitled to pay off any incumbrance against the land to protect her title. It is claimed that for the reason that the Richey mortgage was discharged of record, and that the debt was paid by Riviere before it became due, that Mrs. Albea could be subrogated to the rights of Richey in the property. It appears that the mortgage was discharged of record by direction of Riviere in 1885, for the purpose of having the title to other property embraced in the mortgage freed from the incumbrance as stated by him; but at all events it was done without the knowledge of Mrs. Albea, and equity would

reinstate it for her benefit, for it will not permit the just rights of a party to be lost through a mistake or ignorance of fact when not prejudical to the rights of others. We are also of opinion that it can make no defense as to Mrs. Albea's right of subrogation, that the money was paid by the hand of Riviere, she having furnished it for that purpose, nor does it matter that the debt was paid before it fell due. She was no meddler, but a purchaser having rights in the property, and acted in the matter under a contract with Riviere.' No one except Richey could object to the debt being paid before it fell due; and he does not complain. There is no charge that the debt was not valid. Mrs. Albea at the time of the payment did not know that there was any other lien on the property in existence, and Mrs. Fears was in no way injured or damaged by the paying off of the Richey mortgage; had it not have been paid, Richey would have been entitled to assert his claim to the extent that Mrs. Albea now is entitled to do. Richey's mortgage was but a security for his debt; and it would have been nothing more if it had been past due when paid; the legal title remaining in Riviere for all time until divested by a sale. We can see no reason, technical or substantial, why the payment when made was not effectual to invest Mrs. Albea with the rights of Richey in the property.

Under authorities hereinbefore referred to, the debt and lien of Richey was equitably assigned to Mrs. Albea on account of her paying off the debt, and the fact that Richey had no knowledge of the payment being made by her, under the circumstances of this case, would not affect her rights in this matter.

It is insisted that the court erred in foreclosing the mortgage executed by Riviere to Richey, without making them parties to the suit, the note of one thousand five hundred dollars that the mortgage was given to secure being in issue; and also in not rendering judgment against Riviere for the amount of the note.

Appellants did not question the right of the court to determine the case, by any exception to appellees' pleading, though the relief granted was prayed for in the answer. It was not claimed but that the debt to Richey was a valid obligation against Riviere and against the land; nor was it denied that the debt was paid in the way, and by the persons, as claimed by appellees; that is, that Riviere procured the money from Mrs. Albea by a sale of the land in dispute, and that the payment was made by him with the money, for her benefit. The effect of

which would be to discharge the debt, as to Riviere, and subrogate Mrs. Albea to the rights of Richey in the premises, as the same existed at the time of the payment of his debt. No judgment, then, could be rendered against Riviere; and he having parted with all title to the land by conveyance to Mrs. Albea, was not a necessary party to the suit, and Richey's debt having been fully paid, there was no necessity of his being made a party—having no right and setting up no claim to the property. If the appellants had raised an issue by their pleading as to these facts, Riviere and Richey would have been necessary parties; but, not having done so in the court below, they should not be heard to complain in this court.

Appellants assert that the court erred in not granting their motion for a new trial on the ground that they were misled and deceived by the following portion of defendant's answer, to wit: "That on the eighth day of August, 1881, said Riviere and wife executed to Eugene Williams, trustee, a deed of trust on said property and two other pieces or lots of land in Waco to secure Jas. R. Richey in the payment of said Riviere note for fifteen hundred dollars—with even date with said trust deed and to become due on August 8, 1882. That afterward, on September 16, 1881, Riviere executed to J. D. Wallace a deed of trust on the same lots and other property to secure Mrs. M. E. Fears in the payment of Riviere's note for fifteen hundred dollars due September 16, 1882, and that Mrs. Fears had full and actual notice of said first named trust deed before the execution of the one to secure her; and in order to protect said Mrs. Fears from said first deed of trust, said J. M. Riviere did by special arrangement with C. P. Albea, pay the said Richey said fifteen hundred dollars on the fifteenth of June, 1882. That when Albea purchased the property for his wife it was agreed that Riviere should take the money paid by him and discharge the Richey debt, and have the note and deed of trust transferred to Mrs. Albea.

Appellants say that they were misled by that portion of the answer that charges that Riviere and Albea caused the Richey debt and mortgage to be paid off for the benefit of Mrs. Fears; and then permitting defendants to show that the payment was made for the benefit of Mrs. Albea. Taking the answer altogether, we think it perfectly apparent that the insertion of the name of Mrs. Fears in the position that it occupies in the answer, was a clerical error, and that if counsel were deceived

and misled that it was on account of negligence and want of ordinary care and attention on their part to the matter at hand.

It is also claimed that plaintiffs' attorneys were deceived and misled by their witness J. D. Wallace in reference to his testimony on a material issue, to wit, that they understood him to say that he would swear that Mrs. Fears had no actual notice of Richey's deed of trust when that to her was executed, and for that reason they went into trial without Mrs. Fears being present, by whom they could prove that fact. It is not shown that Wallace intentionally deceived or misled counsel, nor is it shown but that it was the fault of counsel that they misunderstood Wallace. He was their trustee who negotiated the loan upon the property for Mrs. Fears, and when default was made in the payment, sold it under her deed of trust for her benefit, from which it might be reasonably inferred that he was on friendly terms with her and would not withhold any information about which he might be interrogated, or intentionally, at least, make a statement that would mislead. In his testimony he states that he negotiated the trade for Mrs. Fears; that he had no notice of Richey's deed of trust; that Mrs. Fears had nothing to do with the trade, left it all to him, and that he did not believe that she knew anything of the Richey claim, judging from all of the circumstances. We are at a loss to know how anyone could testify any more definitely in reference to another's want of knowledge on a particular subject like the one at issue, unless it was a fact that Mrs. Fears was not in the country at the time of the negotiation; if that had been a fact, Wallace would have been able to testify to it. We do no think that counsel were justified in being deceived, misled or surprised at the evidence of Wallace.

An additional reason why the court did not err in refusing to grant a new trial on the grounds urged, is that, in reply to plaintiff's motion, supported by the affidavit of Mrs. Fears, that she did not have notice of the Richey deed of trust at the time she acquired the deed of trust from Riviere on the property, defendants filed affidavits of Riviere and Albea stating that at the time of the trial Mrs. M. E. Fears was in Waco, at the house of J. D. Wallace, the trustee in her deed of trust, which was within three blocks of the court house, which not being contradicted, will be taken as true. It is thus shown that ordinary diligence could have procured the evidence of Mrs. Fears on the trial, if it had been desired. Having taken the chances without it, the

rules of law will not authorize the re-opening of the case, for the purpose of making an experiment with her testimony added. It is not important that C. P. Albea should, at the sale of the property by J. D. Wallace, under Mrs. Fears's deed of trust, have stated the grounds of his wife's claim to the property, or should have given notice of her claim at all, in view of the fact that the property was purchased by Mrs. Fears, and that she is charged with notice of Richey's claim before the deed of trust on the property was executed to Wallace. Waiving the question of diligence, the newly discovered evidence only tends to contradict C. P. Albea as to the grounds he stated that he claimed the property on, at the sale by J. D. Wallace, he having testified at the trial that he gave notice that it was the homestead of Riviere and wife, and that Mrs. Riviere had not signed the deed of trust, and that he had purchased Richey's claim and claimed under that also—the newly discovered evidence tending to show that he did not give notice of the latter claim. J. D. Wallace and Mrs. Fears's husband had each testified on the trial that Albea did not assert the latter claim at the sale; and the alleged newly discovered evidence would be cumulative, and would only contradict Albea on an immaterial issue, and did not authorize the granting of a new trial.

The twelfth assignment is that there was error in finding that Mrs. Fears had actual notice of Richey's deed of trust, at the time she acquired her lien on the property. There was evidence before the district court that she had notice of it, though there was evidence tending to a contrary conclusion. It was the province of the court below to pass upon the credibility of the witnesses and the weight of the evidence, and we see no sufficient cause in this case to disturb the findings.

The last assignment is, that the court erred in refusing to sustain plaintiff's general demurrer to defendant's amended answer. The answer set forth allegations amply sufficient to authorize the admission of all the facts proven on the trial, and if the facts authorized the judgment, it follows that there was no error in overruling the general demurrer.

There is error in the judgment, however. Mrs. Fears's deed of trust was of prior date to the deed from Riviere and wife to Mrs. Albea, and was duly recorded at the time of the execution of the latter, and the land having been sold under said trust deed and purchase by Mrs. Fears, her title was superior to that of Mrs. Albea, and the court should have ordered the land sold,

and the proceeds applied first to the payment of the Richey note and interest, and the balance to Mrs. Fears, and the judgment is here now reformed in that respect, but as the judgment in this regard was not assigned as error, Mrs. Fears should pay the costs of this appeal, and we report that the judgment be reformed and affirmed.

*Reformed and affirmed.*

Opinion adopted **December 3, 1887.**