## HARRISON v. FIRST NAT. BANK OF LEWISVILLE et al. (No. 285–3533.)*

(Commission of Appeals of Texas, Section A. March 1, 1922.)

**1. Subrogation ☞14(3)—Grantee not subrogated to rights of lienholder on payment of debt assumed.**

When a grantee as part of the consideration for land assumes the payment of a mortgage or other lien against it, the payment of the indebtedness which the lien represents completely extinguishes the lien, and the grantee cannot be subrogated to the rights of the lienholder, nor keep the lien alive for any purpose.

**2. Subrogation ☞23(1) — Person paying off mortgage at instance of debtor entitled to subrogation.**

When any person having a subsequent interest in premises, and who is therefore entitled to redeem for the purpose of protecting such interest, and who is not the principal debtor primarily and absolutely liable for the mortgage debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep alive and enforce the lien so far as may be necessary in equity for his own benefit, and is subrogated to the rights of the mortgagee to the extent necessary for his own equitable protection; and such is also true as to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment at the instance of a debtor party and for his benefit; such a person being in no sense a mere stranger and volunteer.

**3. Subrogation ☞14(4)—Grantee held subrogated to rights of holder of vendor's lien note and tax lien.**

Grantee assuming payment of vendor's lien note and tax lien to prevent a foreclosure, the grantor being given an option to repurchase within a year, *held* entitled to subrogation to the rights of the holder of the vendor's lien note, which he subsequently paid; an outright purchase of the property not being intended.

**4. Subrogation ☞33(3) — Lienholder' paying taxes held entitled to be subrogated in proportion against holders of other liens.**

A grantee of land entitled to subrogation to lien of vendor's lien note discharged by him, who paid taxes upon the entire property under the belief that his lien was superior to judgment liens, was entitled, as against the judgment liens, to be subrogated to the tax lien to the extent that the proportion of the property necessary to discharge the judgment liens bore to the amount paid out by him.

**5. Homestead ☞103—Judgment lien attaches to excess before determination of amount.**

A lien of a judgment attaches to the excess in value of the homestead before there is a determination of the amount of the excess and a segregation of it from the undivided interest.

**6. Homestead ☞104—Judgment ☞743(2)—Judgment a lien after abandonment; judgment that entire property was homestead res adjudicata in subsequent action to enforce personal judgment.**

Where court in an action to foreclose a lien determined that the entire property was the defendant's homestead, plaintiff was estopped in a subsequent action to satisfy the personal judgment from claiming that there was an excess over and above the homestead exemption at the time the former judgment was rendered, but a judgment lien attaches to property as soon as it was abandoned as a homestead, subject to superior liens.

**7. Homestead ☞104—Judgment liens arising simultaneously on abandonment of equal rank.**

Judgment liens, existing at the time of abandonment of a homestead, are of equal dignity, and are entitled to equal rank in the distribution of proceeds of sale.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by James Harrison against the First National Bank of Lewisville, the Texas Bitulithic Company, and others. From a judgment of the Court of Civil Appeals (224 S. W. 269), reforming and affirming a judgment from which the plaintiff and the last-named defendant appealed, the plaintiff brings error. Reformed and affirmed.

Templeton & Milam, of Ft. Worth, for plaintiff in error.

W. Stover and W. W. Wilkinson, both of Fort Worth, and L. M. Dabney and H. G. Goggans, both of Dallas, for defendants in error.

SPENCER, P. J. J. D. Hagler and wife, Cora B. Hagler, purchased the property in controversy, consisting of an improved lot, on September 24, 1911, and immediately moved thereon and occupied it as a homestead. By deed, dated April 28, 1916, they conveyed this property to C. O. Crockett for the recited consideration of $10,000 cash, and the retention of a vendor's lien note in the sum of $15,000, with interest at 8 per cent., payable annually, with the option of the holder of the note to declare the whole note due in the event of the nonpayment of interest. The note was payable to the order of Cora B. Hagler, and was executed by the grantee, Crockett. On the day that the note was executed, Hagler and wife, in consideration of the actual payment of $15,000 in cash by plaintiff in error, acting as agent of Mrs. Culberson, sold and transferred the note and assigned and conveyed the lien securing it to the latter. On the same day C. O. Crockett reconveyed the property to the wife, Cora B. Hagler, as her separate property for the recited consideration of $500 cash and the assumption of the $15,000 vendor's lien note, which Crockett had executed. This deed was

recorded on July 15, 1917. By deed dated July 6, 1917, under the conditions which will be hereinafter detailed, Hagler and wife deeded the property to plaintiff in error, James Harrison.

This suit was instituted by plaintiff in error in the form of trespass to try title, the purpose of which was to remove the cloud cast upon the title by the abstracting of two judgments against J. D. Hagler, which appear in the judgment lien records of Tarrant county, Tex.; one in favor of defendant in error First National Bank of Lewisville, Tex., recorded March 1, 1916; the other in favor of defendant in error Texas Bitulithic Company, recorded October 4, 1915. The record shows that in the suit which resulted in the latter judgment, the bitulithic company sought a foreclosure of an alleged lien for paving, and that Hagler pleaded that the property was the homestead of himself and family. The judgment recites that "it is agreed between the parties that the foreclosure of the lien be denied."

Plaintiff in error alleged that the judgment liens were null and void as to the property in question, because it was the homestead of Hagler and family, at the time the judgments were abstracted. Defendants in error replied that at the time that Hagler designated the property as his homestead the lots upon which the house was built exceeded in value the constitutional limit of $5,000, exclusive of improvements, and that the lot to the extent of such excess value was subject to their liens. They also pleaded that the transaction between the Haglers and Crockett, and the one between the Haglers and plaintiff in error on behalf of Mrs. Culberson, were simulated and not made in good faith, in that it was an attempt to create a lien upon the homestead, and that the note and lien were for that reason invalid, but that if such transaction were regular, then such acts and transfers constituted an abandonment of the homestead, and that the liens attached immediately upon such abandonment.

The jury in response to the special issues found that at the time plaintiff in error acquired the note for Mrs. Culberson he had no knowledge that the transaction between the Haglers and Crockett was a sham sale, executed for the purpose of borrowing money on the homestead; that the reasonable market value of the lot, without reference to any improvement, was $8,000, on September 25, 1911, the date of its purchase by the Haglers; that the reasonable market value of the lot, as improved, was $24,000; that the improvements constituted two-thirds and the lot one-third of the value of the entire property. The court in supplementing the findings of fact found that Hagler and family abandoned the property as their homestead on the 28th day of May, A. D. 1917.

The trial court rendered judgment as follows: In favor of the bank foreclosing its lien on the excess in value of the homestead; denying the bitulithic company a foreclosure of its lien because of the recitals in the judgment to the effect that it was agreed that there should be no foreclosure of the lien in favor of the bitulithic company; decreeing that plaintiff in error had acquired a homestead interest in the property to the extent of $5,000. The court found that the property was incapable of partition, and ordered it sold and the proceeds applied as follows: First, to pay the plaintiff in error the sum of $5,000; and, second, to pay the bank the amount of its debt; the balance, if any, to be paid the plaintiff in error.

Upon the original hearing the Court of Civil Appeals held that: (1) A foreclosure of the lien of the bitulithic company having been denied in the original suit, the determination of the issue in that suit operated as an estoppel and a bar to a litigation of it in the present suit; (2) that, although the transaction between the Haglers and Crockett was a simulated sale, the innocent holder of the vendor's lien note for value was entitled to enforce the lien; and (3) that the bank was entitled to have its lien established and foreclosed upon the excess found by the jury. Upon rehearing that court held that, as the Haglers had abandoned the property as a homestead, prior to the deed to Harrison, the judgment liens attached contemporaneously with such abandonment, and that the title acquired by Harrison was subordinate to both of the judgment liens. The judgment was reformed to conform to these views. 224 S. W. 269.

[1] It is a settled rule of law that, when a grantee, as a part of the consideration of the land, assumes the payment of a mortgage or other lien against it, the payment of the indebtedness which the lien represents completely extinguishes the lien, and the grantee cannot be subrogated to the rights of the lienholder, nor keep the lien alive for any purpose. Pomeroy's Eq. Juris. (4th Ed.) vol. 3, par. 1206, p. 2877.

[2] Another rule of universal application is thus stated by Mr. Pomeroy, in the same work (vol. 3, par. 1212, p. 2902):

"In general, when any person having a subsequent interest in the premises, and who is therefore entitled to redeem for the purpose of protecting such interest, and who is not the principal debtor primarily and absolutely liable for the mortgage debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep alive and enforce the lien so far as may be necessary in equity for his own benefit; he is subrogated to the rights of the mortgagee to the extent necessary for his own equitable protection. *The doctrine is also justly extended, by analogy, to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit; such a person*

*is in no true sense a mere stranger and volunteer."* (Italics ours.)

As indicated by the authorities cited the honorable Court of Civil Appeals treated the case as falling within the rule first stated; that is, that plaintiff in error, as a part of the consideration, assumed to pay off and discharge the lien, and consequently became primarily liable for the debt and that payment by him extinguished the lien without any right of subrogation accruing to him. In view of certain undisputed facts this conclusion is, we think, erroneous.

As agent of Mrs. Harrison, plaintiff in error made repeated attempts to collect the interest upon the note, and finally threatened foreclosure. With reference to the culmination of his efforts to collect, which resulted in the conveyance to him of the property, plaintiff in error testified:

"When the interest on this note came due, I tried to collect it from Mr. Crockett, but did not succeed, and then I went to Mr. Hagler, who was an indorser on the note. I think Mr. Hagler, at that time, had moved to San Angelo; he did not pay the interest; he said Mr. Crockett had deeded the property back to him, and that he was not able to pay the interest right then, but that he would try and get it up, and I waited on him for quite a little while, and he didn't pay it, and I went out to see him, and told him that something had to be done, and I told him that I might have to take action on the paper, and he said sooner than have it done he would deed the property to me. He says, 'If you will give me an option on it for 12 months, I will deed it to you, and if within that 12 months I sell it or am able to raise the money, I will pay you everyt'ing that you have been out.' That option lasted 12 months, and immediately after the expiration of that option he deeded it to me. I gave him an option after the deed was made. * * * The consideration for Mr. Hagler conveying the property to me was the assumption of that note and my payment of the taxes. I paid the note to Mrs. Culberson. I paid it at different times; I think I made it in three different payments of $5,000 each."

Hagler's testimony corroborated that of plaintiff in error, which has been quoted.

[3] The transaction amounted to this: Plaintiff in error at the request of the debtor was to pay, and subsequently did pay, the debt to prevent a foreclosure. The agreement of plaintiff in error to pay Mrs. Culberson the amount of the note operated to prevent a foreclosure of the lien. Plaintiff in error was not a volunteer in the matter of paying the note as that term is understood in the application of the doctrine of equitable assignment, because he paid it at the request of the debtor. Neither can it be said, under all the circumstances, that plaintiff in error intended to make an outright purchase of the property. On the other hand, it is clear that he was but attempting to protect the payment of the note. It would be a great injustice to him to treat the lien as satisfied and destroyed. In order, therefore, to prevent an injustice and to effectuate the intention of the parties, the transaction should be regarded as an equitable assignment of the vendor's lien to plaintiff in error, subrogating him to all the rights, remedies, and priorities of the holder thereof. Fears v. Albea, 69 Tex. 437, 6 S. W. 286, 5 Am. St. Rep. 78; Fievel v. Zuber, 67 Tex. 275, 3 S. W. 273; Pridgen v. Warn, 79 Tex. 588, 15 S. W. 559; Ford v. Ford, 22 Tex. Civ. App. 453, 54 S. W. 773 (writ of error denied) 93 Tex. 683; Mergele et ux. v. Felix et al., 45 Tex. Civ. App. 55, 99 S. W. 709 (writ of error denied); Pomeroy's Eq. Juris. (4th Ed.) vol. 3, par. 1211.

In Fears v. Albea, supra, the court said:

"It is said upon high authority, that when a mortgage is paid by one who is under no obligations to pay it, although he does not take a formal assignment, he is subrogated to the rights of the mortgagee in the mortgaged property, and holds the title so acquired against subsequent incumbrances; although he had also acquired the equity of redemption. In such case no proof of intention on his part to keep the mortgage alive is necessary to give him the benefit of it. Even if a person advancing money to pay a mortgage under an agreement, with the owner of the equity of redemption that it should be assigned to him as security for the money advanced, takes a discharge of the mortgage, he is entitled to be subrogated to the rights of the mortgagee, and have the discharge vacated. 1 Jones on Mortgages, section 877, and authorities there cited. In general any person having a subsequent interest in the premises which are not primarily liable for the mortgage debt, who pays off the mortgage, thereby becomes an equitable assignee of it, and may keep the mortgage alive and enforce the lien for his own benefit."

Had plaintiff in error not furnished the money with which to pay the vendor's lien note, defendants in error's liens, except the lien of the bank upon the excess in value, would have been inferior, and subject to the lien retained in the note and as defendants in error's positions are not changed for the worse by the application of this equitable rule, plaintiff in error's rights of subrogation are unaffected by such liens. Dillon v. Kauffman, 58 Tex. 697; Whiteselle et al. v. Texas Loan Agency (Tex. Civ. App.) 27 S. W. 309; Kline v. Triplett et al. (Va.) 25 S. E. 886.

While, as the equitable assignee of the vendor's lien, plaintiff in error was entitled to foreclose such lien, the voluntary action of the Haglers in conveying and of plaintiff in error in accepting the conveyance in consideration of plaintiff in error discharging the vendor's lien and the tax lien was just as effectual as a foreclosure suit would have been, and in no wise operated to extinguish such lien or destroy its precedence. Jemison v. Halbert, 47 Tex. 180.

In Jemison v. Halbert, one Wofford sold to Edna Peck certain land, and in considera-

tion therefor accepted her written obligation to pay for it, and in turn executed his title bond in her favor, binding himself to make her a good title to the land upon the payment of her obligation. On February 7, 1860, Wofford transferred Mrs. Peck's obligation to R. S. and E. S. Jemison, and in April, 1863, Mrs. Peck in consideration of her indebtedness conveyed the land to the Jemisons and also transferred the title bond to them. In October, 1860, a judgment was rendered against Mrs. Peck and Wofford, which was duly recorded. The land was levied upon and sold to satisfy this judgment.

In disposing of the case in so far as the Jemisons were concerned the court said:

"It is claimed that, although the Jemisons had a lien which was superior to the judgment lien, there was no power in Mrs. Peck to give, nor in them to receive, title freed from the judgment liens; and it is further contended, that by accepting that conveyance, the Jemisons extinguished their lien, and took the property subject to the judgment lien. As to the first proposition, it is not denied by appellees that the judgment creditor, and the plaintiff, as standing in his shoes, would, notwithstanding the conveyance, be entitled to have the judgment paid if the land was of sufficient value to do so after first paying their prior liens.

"In the case before us, the existence of a valid and superior lien in the hands of the Jemisons is established, and that lien was sufficient to support the deed. No reason is perceived why the voluntary action of the parties was not as efficacious as a foreclosure suit against Mrs. Peck alone, nor why such voluntary action, any more than such a foreclosure suit and sale, should operate to extinguish the lien of the Jemisons, or to destroy the precedence of that lien. If, under such a foreclosure, the Jemisons had bought in the land, it is not believed that the holder of a junior lien, who was not a party to that suit, would be precluded from having the land again sold, and the excess of the proceeds, over the amount of the preferred lien, applied to the payment of his demand; nor is it believed that the Jemisons would thereby have lost their right to have their claim paid first."

The tax lien was superior to the liens of all the parties to this suit, and for the nonpayment of which the property might have been sold and a title superior to all the liens given.

[4] Plaintiff in error paid the taxes upon the entire property under the belief that his lien was superior to the judgment liens of defendants in error; but, as it develops that the bank's lien is superior to his lien to the extent of one-eighth of the entire property, he is entitled, as against the bank's superior lien, to be subrogated to the tax lien to the extent that the proportion of the property (not to exceed one-eighth) necessary to discharge such lien bears to the amount paid out by him, and as to both defendants in error he is entitled to be subrogated to such tax lien upon the remaining property.

[5] The action of the Court of Civil Appeals in overruling the contention of plaintiff in error, to the effect that no lien could attach to the excess in value of the homestead until there was a determination of the amount of excess and a segregation of it from the undivided interest, is, we think, correct. In view of this conclusion, we hold, that the bank has a superior lien to plaintiff in error upon the excess, or one-eighth of the entire property, subject to the payment of its proportionate share of the taxes, as above indicated.

[6] We also agree to its holding that the determination of the issue in the suit between the bitulithic company and Hagler, denying the former a foreclosure of its asserted lien, operated as an estoppel and bar to its claim in the present suit that such lien attached to the excess, but that its lien attached to the entire property as soon as the property was abandoned as a homestead. Its lien attached, however, subject to the superior liens, as above indicated.

[7] The liens of the bitulithic company and the bank upon the entire property arose simultaneously, are of equal dignity, and, in so far as priority is concerned, are entitled to equal rank in the distribution of the proceeds of sale.

The judgments of the Court of Civil Appeals and of the district court should be reformed in so far as the distribution of the funds derived from foreclosure, as follows: First, one-eighth of the proceeds to be applied to the payment of the judgment lien in favor of the bank, the fund necessary to discharge the lien, shall be charged with its pro rata of the taxes, as above stated; the excess of the one-eighth portion of the fund, if any, to apply to the payment of the claim of plaintiff in error; second, seven-eighths of the proceeds to apply to the discharge of plaintiff in error's claims founded upon the note and payment of taxes; third, the residue to be applied pro rata to the discharge of the lien of the bitulithic company and any unpaid balance of the bank's lien; fourth, the balance, if any, to be paid over to plaintiff in error.

We recommend that the judgments as reformed be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.