## GLASSCOCK v. TRAVELERS INS. CO. et al.

No. 8527; Motions Nos. 8845–8847.

Court of Civil Appeals of Texas. Austin.

Jan. 20, 1938.

On Motions Feb. 9, 1938.

Rehearing Denied March 1, 1938.

D. A. McAskill, Tuck Chapin, Dave Watson, and D. B. Chapin, all of San Antonio, for appellant.

Renfro & Kilgore, of Dallas, for appellees.

BLAIR, Justice.

As concerns this appeal, appellant, W. D. Glasscock, sued appellees, the Travelers Insurance Company and Texas Farm Mortgage Company, in trespass to try title to recover 10,084 acres of land, known as the Glasscock ranch, in Blanco county. The suit was filed February 18, 1931. On September 24, 1935, appellant filed his third amended original petition, omitting the action in trespass to try title, and specially pleading title under the five and ten year statutes of limitation, Vernon's Ann. Civ.St. arts. 5509, 5510, and prayed that certain conveyances under which appellees claimed title be removed as cloud upon his title. Appellees answered by demurrer, denial, and plea of not guilty; and filed a cross-action against appellant and others in trespass to try title to recover the 10,084 acres of land, specially pleading title as purchaser under a foreclosure of a deed of trust lien securing a note executed in renewal of certain vendor's liens, alleged to be prior and superior to the deed of trust liens under which appellant claimed to have purchased the land; and prayer was for title and possession of the land, and for removal of the conveyances under which appellant claimed as cloud upon title. A second count of the cross-action alleged facts showing that the trustee's deeds and deeds of trust under which appellant claimed

title were not bona fide transactions, but represented the scheme of Alex Glasscock, the father of appellant, to cast cloud upon the title of appellees; the said Alex Glasscock being alleged to be the real party at interest and appellant the nominal party; and prayer was for removal of said conveyances as cloud upon title.

At the conclusion of the evidence both appellant and appellees moved for an instructed verdict. Neither party requested that any issue be submitted to the jury. The motion of appellees was granted and, as concerns this appeal, judgment was rendered that appellant take nothing by his suit against appellees; and judgment was rendered for appellee the Travelers Insurance Company upon its cross-action for title and possession of the land.

We have reached the conclusion that the judgment should be in all things affirmed.

There are two parties to the suit with identical names. W. D. Glasscock, the elder, a brother of Alex Glasscock, is one of the defendants. W. D. Glasscock, the younger, the son of Alex, is plaintiff and appellant. The two will be referred to as W. D. Glasscock, Sr., and W. D. Glasscock, Jr. The testimony appearing in the record is that of W. D. Glasscock, Sr., W. D. Glasscock, Jr., not having appeared at the trial.

The Glasscock ranch is made up of three ranches known as the Kellam ranch, the Jackson ranch, and the Stehling ranch. Alex Glasscock, the father of appellant, was connected with or directed all material conveyances or transactions herein involved. He and his mother purchased the Kellam ranch August 17, 1912, consisting of 2,489½ acres, and as part consideration assumed an indebtedness of $4,150, secured by a vendor's and deed of trust lien, outstanding at the time. A month later Alex deeded this land to his son, Foster, who was at the time about fifteen years of age. On April 1, 1916, Foster, who was also known as Four-Paw Glasscock, deeded the land to his sister, Lizzie Glasscock, at which time Foster was about nineteen and Lizzie about seventeen years of age.

On June 15, 1920, Alex acquired the Jackson ranch, consisting of 4,335.9 acres, from J. R. Christal in consideration of $1,000 cash, and the execution of $24,015.-40 of notes, secured by vendor's and deed of trust liens on the land. This property was transferred by Alex Glasscock to Lizzie DeLoach, née Glasscock, September 18, 1921, and by this same deed Lizzie acquired the record title to the Stehling ranch, consisting of 3,032.72 acres, title to which had theretofore stood in the name of Tina Champion. She acquired the property from Otto Stehling, who acquired it from Wm. Bierschwale, by deed, which recited a consideration of $14,365, of which $10,273 was represented by vendor's lien notes. The deed under which Lizzie took title to both the Jackson and Stehling ranches recited a consideration of $500 cash and her agreement to take the land subject to the aforementioned liens.

Lizzie Glasscock DeLoach filed suit against J. N. Crasilneck, the holder, to set aside the lien on the Kellam ranch; but the court decided the case against her and entered judgment for the sum of $7,600 and decreed a foreclosure of the lien on October 16, 1922.

J. R. Christal filed suit and obtained a judgment on October 19, 1922, for $15,-216.53, with foreclosure of his vendor's lien on the Jackson ranch.

Wm. Bierschwale elected to assert superior title retained in his deed to Otto Stehling and recovered judgment for title and possession of the Stehling ranch on October 19, 1922.

In 1919 or 1920, W. D. Glasscock, Sr., retired from the theatrical business and entered business in San Antonio, Tex. He had furnished money to Alex and his family, and testified that in 1922 he "kinda ran out of money and didn't care much about furnishing them any more money and they suggested, Alex did, that they would deed this ranch to me and I would get a loan and straighten up the outfit, the indebtedness against it, and that we could sell or trade the ranch and make some arrangement whereby I could get my money out of it after it was sold." Alex Glasscock and W. D. Glasscock immediately took steps to carry out this agreement, it being necessary to do so because of the aforementioned judgments ready for execution.

On November 17, 1922, W. D. Glasscock, Sr., applied to the Texas Farm Mortgage Company, and the company agreed to make him a loan of $25,000, secured by a deed of trust lien on the Glasscock ranch. In the application W. D. Glasscock, Sr., stated that the property was encumbered as follows: $2,505 to the state

of Texas; $10,500 to Wm. Bierschwale; $13,082 to J. R. Christal; $7,600 to J. B. Crasilneck; interest and other expenses, $1,900; and that he wanted the money to pay off indebtedness on the ranch. On the following day, November 18, 1922, and shortly thereafter, various parties, including Alex Glasscock and his wife, Pink Glasscock, Lizzie Glasscock DeLoach and her husband, Lonie Glasscock, and Wm. Bierschwale, executed deeds to W. D. Glasscock, Sr., conveying the Glasscock ranch to him. And on May 9, 1923, W. D. Glasscock, Sr., executed to Texas Farm Mortgage Company his note for $25,000, payable January 1, 1934, and a deed of trust lien securing the note on the entire Glasscock ranch. The deed of trust expressly provided that the loan company should be subrogated to the rights of the holders of the original purchase-money notes, and referred to the three above-mentioned judgments as having established the vendor's liens as superior and prior liens upon the land.

The $25,000 loan to W. D. Glasscock, Sr., was not enough to care for all the outstanding indebtedness against the land, and on May 16, 1923, he executed a note for $13,700 to Claud McCauley, and secured it by a deed of trust lien on the land, which expressly recited that it was second and inferior to the deed of trust lien of Texas Farm Mortgage Company, securing the $25,000 note. The proceeds, or a part thereof, of the loan obtained from Claud McCauley were deposited by W. D. Glasscock, Sr., with Texas Farm Mortgage Company; and it disbursed its $25,000 loan together with the money so deposited by paying drafts drawn on it by W. D. Glasscock, Sr., and payable to J. R. Christal, J. N. Crasilneck, and Wm. Bierschwale, in whose favor the three aforementioned judgments were rendered. In addition, Texas Farm Mortgage Company paid $2,868.22 to the state of Texas, for purchase money and patent fees on a portion of the land involved.

On August 20, 1923, Texas Farm Mortgage Company sold and assigned the $25,000 note and the deed of trust lien securing it to appellee the Travelers Insurance Company, and it became the purchaser of the land under the trustee's sale of the land, of which sale appellant had notice.

Appellee having alleged and proved the above-detailed facts, without material dispute, it established its title as purchaser under the deed of trust securing the $25,000 note; and since the undisputed evidence showed that the note was executed to take up and extend the time of payment of purchase-money obligations created prior to 1920, as shown by the deed records of Blanco county, and the three aforementioned judgments and the evidence, the money being advanced at the request of W. D. Glasscock, Sr., the then record owner of the Glasscock ranch land, the trial court correctly instructed a verdict and rendered judgment for appellee the Travelers Insurance Company for title and possession of the land as against appellant W. D. Glasscock, Jr., who claimed a limitation title under foreclosures of subordinate or inferior deeds of trust liens in 1924. We will briefly advert to these subordinate liens, and later to the limitation issues.

Subsequent to his purchase of the three ranches making up the Glasscock ranch in suit, but prior to the renewal of the original purchase-money obligations into the $25,000 note of Texas Farm Mortgage Company and the $13,700 note of Claud McCauley, Alex Glasscock directed or caused several deeds of trust to be executed as purported liens upon the Kellam, Jackson, and Stehling ranches, as follows:

In 1919, when Lizzie Glasscock was about nineteen or twenty years of age, she purported to borrow $50,000 from Alexander Herman, a stranger or casual acquaintance whom she and her father, Alex Glasscock, met in a San Antonio hotel, and she secured the loan by a deed of trust to W. D. Leon, trustee, on the Kellam ranch land, which was dated May 22, 1919. Lizzie had very little recollection of Herman from whom she obtained $50,000, secured by a second lien on 2,000 acres of ranch land.

About one year after Alex acquired the Jackson ranch, he deeded it to his brother, F. C. Glasscock, who executed a deed of trust to J. F. House, trustee, dated December 31, 1920, and purporting to secure Edward Stewart for a $25,000 loan. Immediately thereafter F. C. Glasscock deeded the property back to Alex Glasscock.

On December 1, 1921, a deed of trust was executed by Tina Champion to Alex Glasscock, trustee for Everet Stewart, who purported to lend her $10,000 upon her equity in the Stehling ranch.

About three months after W. D. Glasscock, Sr., obtained his $25,000 loan from Texas Farm Mortgage Company, he executed a power of attorney to Alex Glasscock; and under such power of attorney Alex executed a deed of trust, dated August 6, 1923, for W. D. Glasscock, Sr., to Everette E. Stewart, trustee for Tina Champion, to secure a $50,000 note which Foster or Four-Paw Glasscock purported to execute to Alexandria Herman. Later Alex Glasscock obtained control of all the aforementioned notes, as follows:

The Everet Stewart $10,000 note against the Stehling ranch was transferred by Alex Glasscock, as attorney in fact for Stewart, to Alex's minor daughter, S. B. (Blanch) Glasscock.

Edward Stewart purported to transfer his $25,000 lien against the Jackson ranch to Alex's daughter, Blanch.

The Lizzie Glasscock $50,000 note to Herman was purported to have been transferred by him direct to S. B. (Blanch) Glasscock.

The Foster or Four-Paw Glasscock $50,000 note to Herman was transferred to Everet Stewart, to Tina Champion, to Blanch Glasscock, with Alex Glasscock executing the transfer for Everet Stewart as agent.

At the time each of these four notes was taken in the name of Blanch Glasscock, she was about nineteen or twenty years of age. She immediately proceeded to foreclose her four deeds of trust liens by appointing her father, Alex Glasscock, substitute trustee, and directing him to hold foreclosure sales. During the months of August and September, 1924, Alex, as trustee, foreclosed the four deeds of trust, and executed four trustee's deeds to his son, appellant W. D. Glasscock, Jr., who was at the time about thirteen years of age; and who was purported to have bid $1,000 at each trustee's sale, regardless of the amount of the indebtedness or the value of the property; and was purported to have thus paid his minor sister, Blanch, $4,000 for her investment represented by notes aggregating the principal sum of $135,000.

Alex Glasscock was unable to satisfactorily explain how he got control of these notes and deeds of trust, and was able to only vaguely describe the parties, other than his minor children and relatives, to such transactions.

■ If, however, it be assumed that these notes, deeds of trust, and trustee's deeds so directed, executed, and controlled by Alex Glasscock are bona fide transactions, they are inferior liens or title, because of the subrogation clause in the deed of trust executed by W. D. Glasscock to secure the $25,000 note of appellee; and the trial court correctly so found.

■ Nor do we sustain the contention of appellant that the Travelers Insurance Company's subrogation was defective because the original purchase-money notes were released by the holders, and because the notes and liens were not assigned to said company.

■ The law is settled that contractual subrogation arises when a person advances money to take up and extend indebtedness secured by a vendor's lien on land under an agreement that such person shall stand in the place of the original holder of the indebtedness; and that subrogation does not depend upon a formal transfer of the instruments evidencing the original indebtedness. Dillon v. Kauffman and Runge, 58 Tex. 696; Rachal v. Smith, 5 Cir., 101 F. 159; Hicks v. Morris, 57 Tex. 658; Warhmund v. Merritt and Metcalf, 60 Tex. 24; Belcher Land Mortgage Co. v. Taylor, Tex. Com.App., 212 S.W. 647; Fears v. Albea, 69 Tex. 437, 6 S.W. 286, 5 Am.St.Rep. 78; Hays v. Spangenberg, Tex.Civ.App., 94 S.W.2d 899.

■ But regardless of subrogation, appellant W. D. Glasscock, Jr., acquired no right in the Stehling ranch under his trustee's deed foreclosing the deed of trust which Tina Champion executed to Alex Glasscock, trustee, conveying the Stehling ranch to secure Everet Stewart in the sum of $10,000, because the aforementioned judgment of Wm. Bierschwale for title and possession ran against Everet Stewart and completely cut him out. Thereafter W. D. Glasscock, Sr., acquired title under a deed from Wm. Bierschwale; and Glasscock's title passed under the foreclosure of the deed of trust executed by him to Texas Farm Mortgage Company. Hampshire v. Greeves, 104 Tex. 620, 143 S.W. 147.

■ Nor do we sustain the contention of appellant W. D. Glasscock, Jr., that he and not W. D. Glasscock, Sr., was the grantee in the deed dated November 18, 1922, from Alex Glasscock and wife, Pink Glasscock; Dugan DeLoach and wife, Lizzie DeLoach; Four-Paw Glasscock; and Lonie Glasscock to "W. D. Glasscock, of the County of Bexar and State of Texas," conveying all of the Kellam ranch land.

In the first place, the deed itself recited that the land was conveyed to "W. D. Glasscock of the County of Bexar and State of Texas." It is undisputed that W. D. Glasscock, Sr., had lived in Bexar county from 1919 until the date of the trial; and the undisputed evidence also showed that W. D. Glasscock, Jr., had lived in Blanco county from 1921 to the date of the trial, except for the time that he lived in Saragoza, Mexico, in 1925, and at the time that he was away at school for several years.

In the second place, the circumstances indisputably show that the deed was made to W. D. Glasscock, Sr., rather than to the thirteen year old W. D. Glasscock, Jr. It was made the day following the application of W. D. Glasscock, Sr., for the purpose of enabling him to secure the $25,000 loan from appellee company, with which to pay off outstanding liens and judgments foreclosing them against the land. The first notice to appellee company of such a claim was on the first day of the trial when Lizzie Glasscock DeLoach testified that she executed and delivered a deed dated November 18, 1922, covering the Kellam ranch to "Little W. D.," meaning appellant. Alex Glasscock also testified that Lizzie once owned the Kellam ranch, but deeded it to W. D. Glasscock, Jr. These were the only grantors named in the deed who testified at the trial. Lizzie further testified, however, that she deeded the land to her uncle, W. D. Glasscock, Sr., because she was about to lose the land to Crasilneck, who held a lien and judgment foreclosing it on the land; and because she thought her uncle could pay for it; and that her father and stepmother joined her in the deed. And Alex Glasscock made affidavit in aid of W. D. Glasscock, Sr.'s obtaining the $25,000 loan from appellee company in 1923, as follows: "That whereas, W. D. Glasscock of Bexar County, Texas, has applied to the Texas Farm Mortgage Company for a loan on certain tracts and parcels of land lying and being situated in Blanco County, Texas, consisting of 10,084 acres of land, which lands Alex Glasscock formerly owned an interest in * * * that all conveyances shown in the abstract of title to said lands from the said Alex Glasscock to W. D. Glasscock and to any other persons are bona fide, and it is understood that the loan made to said W. D. Glasscock upon said lands by the said Texas Farm Mortgage Company is made upon the statements and representations set out in this affidavit."

The only other evidence on the issue was the statement of W. D. Glasscock, Sr., when shown the deed record of Blanco county showing the deed, that he did not recognize the deed, and that he did not believe it was delivered to him because dated in 1922; and that his transactions with the ranch did not occur until 1923. This was clearly a mistake, because his application for the loan was dated November 17, 1922, and the other ranches involved were deeded to him in the early months of 1923. All of said deeds were filed for record by Alex Glasscock; and Alex and the Decker Company prepared and directed the execution of all deeds and instruments connected with the $25,000 loan by appellee company. Under such evidence, the trial court properly instructed a verdict against appellant W. D. Glasscock, Jr., upon his claim that the Kellam ranch was deeded to him and not to his uncle, because he acquired no right under said deed dated November 18, 1922.

Nor could appellant have any claim of title by limitation upon said deed dated November 18, 1922, even if it be assumed that it were intended to convey the Kellam ranch land to appellant W. D. Glasscock, Jr. His claim of adverse possession was through his father, Alex Glasscock, who continued in possession after he executed the said deed as grantor. To the general rule that possession affords constructive notice of the rights of the party in possession, either by himself or by a tenant, a well-settled exception exists in Texas where the grantor in a deed absolute in form continues in possession of the premises granted. Eylar v. Eylar, 60 Tex. 315; Harris v. Hamilton, Tex.Com.App., 221 S. W. 273; Ramirez v. Bell, Tex.Civ.App., 298 S.W. 924. The only possession of appellant was that of a minor son living on a part of the ranch land with his father, Alex Glasscock, the grantor in the deed.

There is nothing in the record which could be construed as an active claim of title by appellant W. D. Glasscock, Jr., prior to August 5, 1924. One of the three trustee's deeds under which he claimed title was executed on that date; and the other two were dated September 3, 1924. And regardless, however, of adverse possession, appellant's claim of title under the five-year statute of limitation failed, because the undisputed evidence showed that he did not pay the taxes on any of the land for any consecutive period of five years before same

became delinquent as is required by article 5509, relating to title by adverse and peaceable possession for a period of five years. Houston Oil Co. v. Niles, Tex.Com.App., 255 S.W. 604, 605.

W. D. Glasscock, Sr., paid the taxes for the years 1924 and 1925, after they became delinquent and suit therefor had been filed. The taxes for the years 1929, 1930, and 1931 have not been paid; and the record shows that all taxes which were paid on time were paid by W. D. Glasscock, Sr.

 Appellant also failed to establish his claim of title by limitation as against appellee the Travelers Insurance Company, the holder of a valid and recorded superior deed of trust lien against the land, because appellant failed to show that the company had any notice of any adverse claim and possession of appellant inconsistent with its lien.

 The $25,000 loan and lien securing it were made and transferred to appellee the Travelers Insurance Company in 1923, at which time the record title to the Glasscock ranch was in W. D. Glasscock, Sr., and the deed of trust executed by him was duly recorded in Blanco county. Alex Glasscock and his family, including W. D. Glasscock, Jr., then a boy about ten years of age, had been living on the ranch since 1921, and they continued to live on a part of it until 1925, when they went to Saragoza, Mexico, and returned to the ranch in 1926. At the time the loan was made, Alex Glasscock made affidavit that he was living on the ranch and running it for his brother, W. D. Glasscock, Sr. There is nothing in the record as affects the company to show that Alex Glasscock did not continue to live on the ranch as such manager; nor is there any evidence tending to show that Alex, W. D., Jr., or anyone ever gave notice, nor did anything happen prior to appellant's filing suit in 1931 for title and possession, which would apprise the appellee the Travelers Insurance Company that Alex or W. D., Jr., occupied or claimed to occupy the ranch in any capacity other than as stated in the loan papers. And even though the appellee company had heard, which was not shown, that W. D., Jr., was claiming the title to the ranch, as he told his witness in 1924, that claim could only have been predicated upon the trustee's deed aforementioned, executed by Alex as substitute trustee to his minor son. A claim of title and possession under such trustee's deeds was not inconsistent with the appellee company's outstanding and effective prior deed of trust lien, because the deeds of trust liens under which W. D., Jr., claimed to have purchased the land in 1924, had been expressly found by the district court of Blanco county to be subordinate and inferior to the purchase-money obligations renewed and extended in appellee company's note and lien. In such circumstances, W. D., Jr., could have only purchased such title as a sale under such inferior deeds of trust would convey, and he was entitled to possession thereunder; but such possession and claim of title would not be notice to the loan company that he was claiming adversely to its outstanding and duly recorded superior deed of trust lien. That is, appellant having acquired title, and the land being subject to appellee's superior and duly recorded lien at the time appellant placed his trustee's deeds on record and took possession, his possession was not adverse to appellee's claim of lien. As such owner of the land, appellant was entitled to possession; and appellee company had at no time been entitled to possession until it became purchaser under the foreclosure sale of its deed of trust in 1935. Under these undisputed facts, it is manifest that appellant's possession was not adverse to appellee's claim of lien and could not affect their right to a foreclosure of the lien. R. B. Templeman & Sons v. Kempner, Tex.Civ. App., 223 S.W. 293, error refused; Duty v. Graham, 12 Tex. 427, 62 Am.Dec. 534, Gibbs v. Barkley, Tex.Com.App., 242 S.W. 462.

The only actual notice to appellee company of any adverse claim of appellant appears in the testimony of W. D. Glasscock, Sr. He stated that he discussed the claim of appellant with an agent of appellee company for the "last three or four years." This would fix the date of the earliest discussion in 1931, or about the time appellant filed his suit, or subsequently thereto.

Since the possession of appellant was not adverse, under our above conclusions, to the rights of appellee company, it is unnecessary to discuss whether such possession was continuous for the required period, although the undisputed evidence showed possession not to be continuous.

The above conclusions dispose of the controlling issues in the case, and since we have carefully examined appellant's remaining 25 or 30 propositions and find that they do not present error, we pretermit a discussion of

1012

them, and affirm the judgment of the trial court in all things.

Affirmed.

### On Appellant's Motions.

Appellant, W. D. Glasscock, Jr., has filed a motion "to correct erroneous statements in opinion," a motion for certiorari to perfect the record to incorporate his original petition in trespass to try title, and a motion for rehearing. The motion for certiorari is granted. The motion to correct statements in our opinion is granted so as to show that Texas Farm Mortgage Company was not a party to the suit, and to show that appellee Travelers Insurance Company was not made a party defendant until appellant filed his second amended original petition in 1935. These matters are wholly immaterial, except as to the one ground holding that the filing of the trespass to try title suit in 1931 tolled the running of the statutes of limitation during the time such suit was pending. Since appellee insurance company was not a party to said suit in trespass to try title, it was not affected by that suit; and the portion of our opinion relating to that suit as tolling the running of the statutes of limitation will be deleted. All other grounds upon which our opinion is based and our statements thereof remain unchanged; and appellant's motion for rehearing is overruled.

Granted in part and in part overruled.